COMMONWEALTH vs. JUAN CARABALLO.

No. 91-P-1271.

Suffolk. October 14, 1992. - November 20, 1992.

Present: PERRETTA, FINE, & GILLERMAN, JJ.

*Controlled Substances. Practice, Criminal*, Required finding.

The evidence at a criminal trial was insufficient to permit a conclusion beyond a reasonable doubt that the defendant constructively possessed cocaine, where the evidence showed only that the defendant was present near a quantity of the drug which police discovered behind a ceiling panel in a common hallway close to the apartment in which he lived. [618-620]

INDICTMENT found and returned in the Superior Court Department on December 6, 1988.

The case was tried before *John C. Cratsley*, J.

*Benjamin H. Keehn*, Committee 'for Public Counsel Services, for the defendant.

*Marina Medvedev*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On an indictment charging the defendant with trafficking in cocaine, the jury found him guilty of the lesser included offense of possession of that drug. Taking the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, we conclude that it was insufficient to show beyond a reasonable doubt that the defendant constructively possessed cocaine. We reverse the judgment.

1. *The evidence.* Evidence was admitted without objection to show that about 6:00 P.M., on February 28, 1988, Boston police detective Joseph Driscoll received a telephone call from someone stating that an Hispanic male was selling cocaine from apartment 610 at 270 Huntington Avenue. The

caller indicated that cocaine might be hidden in either an electrical box or the ceiling. Within ten minutes of the call, detectives Driscoll, Arthur O'Connell, and Edward Dominguez drove to the address in an unmarked police vehicle.

Upon arriving at the building, the detectives saw that the name appearing on the mailbox for apartment 610 was Mateos. They took the elevator to the sixth floor, turned the corner of a small hallway leading to a long corridor, and saw the defendant standing by a chair about fifty feet away. The detectives walked toward the defendant, passing several closed doors on each side of the corridor. No one else was in the corridor.

As the detectives approached the defendant, they asked him what he was doing. He did not respond. When asked where he lived, the defendant pointed to the door of apartment 610. The chair was to the right of that door, against the wall. The door was more than half open, and the detectives could see a man and woman inside the apartment looking out into the hallway.

Detective O'Connell got up on the chair, slid back the ceiling panel above it, and searched about with his hand. He retrieved a large plastic bag containing twenty-two smaller plastic bags of white powder later determined to be cocaine. As O'Connell was standing on the chair, a male came around the corner down the hallway, stopped at the first apartment, watched the men for a few seconds, then left.

After arresting the defendant, the detectives searched the apartment. They found no evidence of drug use or distribution, e.g., drugs, drug paraphernalia, lists, cutting agents, bags, or currency. They did not arrest the man or woman in the apartment. At the police station; the defendant gave his name and produced identification, a driver's license, and a Social Security card. He stated that he was unemployed. No currency was taken from him.

On the basis of this evidence, the defendant contends that he was entitled to a required finding of not guilty on the indictment. The Commonwealth argues that the evidence allows the reasonable inferences that the defendant was either

the owner or custodian of the drugs, that the man and wo-
man in the apartment were there to buy cocaine, and that
the defendant was in the process of retrieving it from above
the ceiling in the hallway when the detectives arrived on the
scene and interrupted the sale.

2. *Discussion.* To sustain its burden of proving that the
defendant constructively possessed the cocaine, the Common-
wealth was required to supplement its evidence of the de-
fendant's presence in the hallway near the drugs with other
incriminating evidence. See *Commonwealth* v. *Brzezinski*,
405 Mass. 401, 409-410 (1989); *Commonwealth* v. *Arias*, 29
Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005
(1991). The Commonwealth seeks evidentiary support from
the following circumstances: the chair outside the door of the
apartment, the defendant's presence by the chair, the par-
tially open door, two people peering from that door into the
hallway, and the defendant's statement that he lived in the
apartment. From the Commonwealth's point of view, it is
reasonable to infer from these facts that the defendant had
momentarily left his apartment and either was about to
climb onto the chair or had just come down from it. "An
inference drawn from circumstantial evidence 'need only be
reasonable and possible; it need not be necessary or ines-
capable.' *Commonwealth* v. *Beckett*, 373 Mass. 329, 341
(1977). 'The Government . . . need not exclude every rea-
sonable hypothesis of innocence, provided the record as a
whole supports a conclusion of guilt beyond a reasonable
doubt.' See *United States* v. *Systems Architects, Inc.*, 757
F.2d 373, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985)."
*Commonwealth* v. *Merola*, 405 Mass. 529, 533-534 (1989).

Although the Commonwealth's inferences might be
thought reasonable, there are equally reasonable but incon-
sistent inferences available on the same facts. There were
several apartments on each side of the hallway leading to the
apartment in which the defendant lived. Other than the prox-
imity of the chair to the door of unit 610, there was no evi-
dence showing that it had come from or belonged to the oc-
cupants of that apartment. Nor was there any evidence to

show whether the man and woman in the apartment were residents or visitors, whether the defendant had just come from the apartment, or whether he was about to go into it. Moreover, it cannot be stated with any degree of reasonable certainty whether the door had been left open for the defendant while he went to deposit or retrieve cocaine or whether it had been opened in response to his knock or, perhaps, the activity in the hallway. Further, we do not think it reasonable to infer a consciousness of guilt on the part of the defendant from his failure to respond to an inquiry as to his presence from three men who had not identified themselves to him as police officers.

"When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979), quoting from *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962), quoting from *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940). As the Commonwealth's proposition, that the defendant had just come from or was about to go to the drugs, was not established by "legitimiate proof," we are left with his presence near drugs secreted in the ceiling of the common hallway close to the apartment in which he lived.

The Commonwealth's reliance upon *Commonwealth* v. *Montanez*, 410 Mass. 290, 305-306 (1991), is misplaced. In addition to other circumstances which tipped the scale against the defendant in that case, there was evidence in his apartment which linked him to the drugs found in the dropped ceiling just outside his door. As noted in an analogous context, "[e]ach instance of a prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide; yet our present decision appears supported by the prior holdings." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984). The evidence in the present case is insufficient to support a conclusion beyond a reasonable doubt that the defendant possessed cocaine. See *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 411-413 (1986); *Commonwealth* v. *Handy*, 30

Mass. App. Ct. 776, 780-782 (1991); *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 687-690 (1991).

The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for entry of a finding of not guilty.

*So ordered.*