COMMONWEALTH vs. MONTY WASHINGTON.

No. 99-P-916.

Hampden. August 4, 2000. - October 4, 2000.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Controlled Substances. Evidence,* Inference. *Practice, Criminal,* Required finding.

Evidence at a criminal trial was sufficient to establish the defendant's construc-
tive possession of a quantity of cocaine found by police in a bedroom of a
home, where the jury could reasonably infer that the defendant occupied
that room, and where the defendant was seen selling drugs on the day of
the search: consequently, the judge erred in allowing the defendant's mo-
tions for required findings of not guilty on indictments charging trafficking
in cocaine. [168-170]

INDICTMENTS found and returned in the Superior Court Depart-
ment on May 30, 1996.

The cases were tried before *C. Brian McDonald, J.*

*Jane Davidson Montori,* Assistant District Attorney, for the
Commonwealth.

*Chistopher M. Dunn* for the defendant.

BROWN, J. After a jury convicted the defendant of trafficking
in cocaine, G. L. c. 94C, § 32E(*b*), within 1,000 feet of a school,
G. L. c. 94C, § 32J, the trial judge allowed the defendant's mo-
tions for required findings of not guilty. The Commonwealth
has appealed the allowance of those motions to this court. Mass.
R.Crim.P. 25(c)(1), as amended, 389 Mass. 1107 (1983). We
agree with the Commonwealth that the evidence it presented at
trial was sufficient to support the jury's guilty verdicts. Accord-
ingly, we reverse the trial judge's orders.

We summarize the evidence presented in the Commonwealth's
case. On May 8, 1996, the Springfield police obtained a search
warrant for the second and third floors of a two-family house at
56 Middlesex Street, the residence of the defendant's mother.

On May 9, a police surveillance team saw the defendant enter the house at 56 Middlesex Street, and later leave with a woman and several children. The defendant, the woman, and the children got into a blue Cadillac and drove off. The police stopped the Cadillac, and the defendant was returned to 56 Middlesex Street. The woman who had gotten into the Cadillac with the defendant was the defendant's mother; she also returned with the police to 56 Middlesex Street, and gave the police keys with which they opened the door to the house. The police searched the third floor of the house where they discovered a number of unoccupied rooms, as well as one room which contained several beds and items of children's clothing, and another room which contained a mattress and box spring, a computer, and men's clothing. In the room in which there was men's clothing, the police discovered, in the pockets of a pair of tan pants, cocaine valued at approximately $1,700. The police also discovered $700 in cash hidden in a black boot and drug paraphernalia, including a triple beam scale, a drug ledger, and baggies with the corners cut off. On the floor next to the drug paraphernalia, the police found a check-cashing identification card. The identification card listed the defendant's name and date of birth, and displayed a photograph of the defendant. The defendant's address was listed on the identification card as 56 Middlesex Street.

Earlier in the day that the search warrant was executed, the police had observed the defendant engaged in conversation with a man on a Springfield street corner. The police saw the defendant spit a small object into his hand and display it to the other man. The man gave the defendant cash; the defendant gave the man the object in his hand. Lieutenant Charles Cook, one of the officers who had seen this transaction, testified that it was consistent with the street-level sale of crack cocaine.

We think that on this evidence a rational jury could have found beyond a reasonable doubt that the defendant constructively possessed the cocaine the police recovered from the third-floor bedroom at 56 Middlesex Street. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). The defendant's ready access to his mother's apartment in the house at 56 Middlesex Street may be inferred from his entry into the house on the day of his arrest, and the fact that he had listed his mother's address on the check cashing card. The defendant's particular connection to the room where the cocaine was discovered may be inferred

from the fact that his identification (I.D.) card was found there. See *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 505-506 (1998) (defendant's occupancy of bedroom could be inferred in part from the fact that his birth certificate and social security card were found on a bureau in that room). Further, the fact that the I.D. card was found on the floor next to drug paraphernalia strengthens the inference that the defendant possessed the drugs found in the tan pants. See *Commonwealth* v. *Antonio*, 45 Mass. App. Ct. 937, 938 (1998) ("an inference of possession may be drawn from the close proximity between [the defendant's] personal belongings and the drugs"). Contrast *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 169 (1995) (neither the defendant's personal papers nor her clothing were found in the apartment).

In addition, as previously noted, on the day of his arrest the defendant was seen making what appeared to be a street-level drug sale, and the cocaine recovered from the tan pants was packaged as if for street-level sales. To put this more plainly, the inference that the defendant was the drug-selling occupant of the third-floor bedroom was strengthened by the fact that he was seen on the day of the search selling drugs. Cf. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989) (inference that defendant possessed large quantity of cocaine found in his apartment supported in part by the fact that search of defendant's person turned up an unusually large amount of cash).

In allowing the defendant's motions for required findings, the trial judge remarked, "[T]here just isn't anything [ex]cept that photo ID with the address. There's nothing else to link Mr. Washington to the bedroom, to the clothing in order to tie him to the contraband." We disagree. The defendant's I.D. card did provide the necessary nexus between the defendant and the contraband the police discovered in the third-floor bedroom. "In deciding a rule 25(b)(2) motion for a required finding of not guilty following a guilty verdict, . . . the judge does not properly exercise discretion concerning the weight or integrity of the evidence, but instead must assess the legal sufficiency of the evidence by the standard set out in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979)," *Commonwealth* v. *Doucette*, 408 Mass. 454, 456 (1990), which is to "view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth." *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 308 (1999). While it was within the prerogative

of the jury to reject the evidence concerning the defendant's I.D. card as unconvincing, on the element of possession it was legally sufficient to put the case to the jury.

Our decision in *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912 (1986), relied upon by the trial judge, is not to the contrary. The rule formulated in *Rarick* requires evidence of the defendant's "particular relationship" with the place where the contraband was found, separate and apart from the evidence that personal effects of the defendant were found in proximity to the contraband. That condition is met in this case. In addition to the evidence that the defendant's I.D. card was found next to drug paraphernalia and near the trousers containing the packaged cocaine, there was the evidence that the defendant had listed his address on the I.D. card as 56 Middlesex Street. The evidence that the defendant was selling cocaine on the day of the search also buttresses the commonsense inference that the defendant's I.D. card was in the room with the cocaine because it was the defendant's room, and renders less plausible an inference that the card was there by happenstance or accident.

Finally, we note that the Commonwealth's case did not deteriorate after it rested. The testimony of the defendant's mother that her son did not occupy the third-floor bedroom, and that another man did, "created a conflict in the evidence which was for the jury to sort out and was not material to the required finding issue." *Commonwealth* v. *Valentin*, 420 Mass. 263, 267 n.4 (1995). See *Commonwealth* v. *Hastings*, 22 Mass. App. Ct. 930, 931 (1986).

The orders allowing the defendant's motions for required findings of not guilty are vacated, the jury's verdicts are reinstated, and the case is remanded to the Superior Court for sentencing.

*So ordered.*