## Commonwealth *vs.* Clarence Blevins.

No. 00-P-1703.

Suffolk. March 15, 2002. - October 7, 2002.

Present: Duffly, Kass, & Trainor, JJ.

*Controlled Substances. Simple Joint Possession. Practice, Criminal,* Instructions to jury, Lesser included offense. *Firearms. Evidence,* Firearm, Constructive possession.

At the trial of indictments charging trafficking in controlled substances, the judge committed prejudicial error by refusing to instruct the jury on the lesser included offense of simple joint possession, where the evidence at trial permitted a finding that the defendant and others simultaneously and jointly acquired possession of cocaine for their own use intending only to share it together. [207, 209-210]

At a criminal trial, the judge properly denied the defendant's motion for a required finding of not guilty of unlawful possession of a firearm, where the evidence of the defendant's prior assault with a gun and the presence of a gun in the car in which the defendant was a passenger was sufficient to permit a reasonable inference of the defendant's intent to exercise control over the gun that was found in plain view. [210-212]

Indictments found and returned in the Superior Court Department on March 6, 1997.

The cases were tried before *Robert H. Bohn*, J.

*Heidi B. Shore* for the defendant.

*Keri Dee Rudolph*, Assistant District Attorney, for the Commonwealth.

Duffly, J. The defendant was convicted by a Superior Court jury of assault by means of a dangerous weapon, a handgun, G. L. c. 265, § 15B(*b*); unlawful possession of a firearm, G. L. c. 269, § 10(*a*); trafficking in more than fourteen (but less than twenty-eight) grams of cocaine, G. L. c. 94C, § 32E(*b*)(1); and trafficking in cocaine within 1,000 feet of a school zone, G. L. c. 94C, § 32J. On appeal, the defendant contends that the trial judge committed prejudicial error by refusing to instruct the

jury on the lesser included offense of simple joint possession with respect to the trafficking charges, and by denying his motion for a required finding of not guilty. We affirm the conviction of possession of a firearm,[1] but conclude that the judge's failure to instruct on the lesser included offense requires reversal of the trafficking convictions.

1. *Simple joint possession.* Because the defendant objected to the trial judge's denial of his request that the jury be instructed on the theory of simple joint possession, "we review the omission to determine if there was prejudicial error." *Commonwealth v. Henderson*, 434 Mass. 155, 158 (2001), quoting from *Commonwealth v. Robinson*, 48 Mass. App. Ct. 329, 338 (1999).

(a) *Applicable principles.* "[W]hen the evidence permits a finding of a lesser included offense, a judge must, upon request, instruct the jury on the possibility of conviction of the lesser crime." *Commonwealth v. Roberts*, 407 Mass. 731, 737 (1990), quoting from *Commonwealth v. Hobbs*, 385 Mass. 863, 871 (1982) (emphasis omitted). An instruction on simple joint possession is warranted when the evidence permits a finding that "two or more persons simultaneously and jointly acquire possession of a drug for their own use intending only to share it together." *Commonwealth v. Johnson*, 413 Mass. 598, 604 (1992). See also *United States v. Swiderski*, 548 F.2d 445, 449 n.2 (2d Cir. 1977). Here, the evidence could have supported, as an alternative to trafficking in cocaine, the lesser crime of simple joint possession and, therefore, the jury should have been instructed regarding the possibility of conviction of the lesser crime.[2]

"In determining whether any view of the evidence would support a conviction on a lesser included offense, 'all reasonable inferences must be resolved in favor of the defendant.' " *Commonwealth v. Drewnowski*, 44 Mass. App. Ct. 687, 693 (1998), quoting from *Commonwealth v. Gilmore*, 399 Mass. 741, 746 (1987).

(b) *The facts.* The defendant testified at trial to the following.

---

[1]The defendant makes no claim of error with respect to his conviction for assault by means of a dangerous weapon.

[2]The jury were instructed as to the lesser included offense of simple possession.

He and his friend of thirteen years, Morgan McBride, and McBride's girlfriend, Anita Miller, decided to get together and go out for the weekend. Planning to hit the club circuit later on that evening, the group first went to McBride's house so he could get cleaned up. The defendant and Miller smoked some marijuana as they waited for McBride to shower and change. When McBride joined them, he smoked some marijuana as well and, on learning that only a small amount remained, suggested that the group "get . . . some coke and stuff." Miller said "she was down," meaning she agreed with the suggestion. The three friends then added up the money they had between them. The defendant had two hundred dollars to contribute. Altogether, the three had a total of eight hundred and fifty dollars, which they pooled in order to "buy some cocaine for us, to last us for a few days." McBride placed a call to a friend of his, Tim Horn, who was a middle man for drugs.

The defendant testified that he and his friends traveled by car to an apartment where they met with Tim. Several other people were also present in the apartment, including Anthony Valez, identified by the defendant as the supplier of drugs, Sylvia Smith and others. The defendant stated that he, McBride and Miller all participated in the negotiation and were present during the exchange of money for drugs. Following introductions, McBride "started talking, you know, to Tim, Yo, Tim, you know. And Anthony's, like, What's up? So, we had told Anthony, we had already came up with what we wanted, and we told him we wanted about . . . an ounce and a half of coke. . . . Anthony said, You got the money? . . . And we said, Yeah, we got the money. We showed him the money and then he said okay. He told Sylvia to go get the coke." Ten minutes later, Sylvia returned and gave Anthony the cocaine, which he placed on the table to weigh. The defendant questioned why the cocaine was prepackaged, concerned that it would affect the weight. Sylvia said it was all they had left.[3] "[T]here was a discussion in regards to, you know, negotiations as far as

---

[3]Overruling the prosecutor's objections that the statements constituted hearsay, the judge instructed the jury that they could consider the defendant's testimony as to what Sylvia Smith said solely in order to assist them in weighing the credibility of the witnesses.

. . . the payment was concerned. Because, you know, again, if we're asking for them in bulk weight — but, you know, we wanted to just . . . party anyway. Anita was, like, you know, [t]he heck with it. It doesn't matter, you know." The defendant then paid the eight hundred and fifty dollars. He counted the packages and put them into the two bags in which they had originally been delivered to the apartment. The smaller of the two packages fell, its contents spilling to the floor. A woman who was present in the apartment during the drug transaction helped retrieve the spilled packages, then left the apartment.

Believing that the woman had taken some of the cocaine, the defendant and McBride followed her outside. There, a confrontation took place between the seller group, on the one hand, and the defendant and McBride, on the other, in which the woman was accused of taking the smaller bag of cocaine. When McBride brandished a handgun,[4] the drugs were returned. The defendant and McBride then got into their car, where the defendant handed the smaller bag to McBride. Miller, who had in the meantime also returned to the car, drove. They were soon followed by police officers, who turned on their cruiser's blue lights. When Miller pulled over, the defendant fled on foot. Drugs and a gun were found in plain view on the floor in the back seat area of the car. The defendant, who was soon apprehended, had no guns or drugs on his person.

(c) *Discussion.* This evidence — that the defendant and his two companions were friends who on occasion shared drugs; that the three had pooled their money to purchase drugs they intended to share; that they each participated in the negotiation for the purchase of drugs; and that all were present when the drugs were paid for and received — was, if believed, sufficient to support a finding that the drugs were simultaneously and jointly acquired and intended to be shared only by the three purchasers.

The Commonwealth argues that a simple joint possession instruction was not warranted because the defendant held the money, paid for, and took possession of the drugs. The cases

---

[4]Although the Commonwealth's witness testified that the defendant also brandished a gun, see part 2, *infra*, the defendant testified only that McBride "pulled out his pistol."

upon which the Commonwealth relies may be distinguished on grounds that, unlike here, the alleged joint possessors did not actively participate in the initial purchase of contraband. In *Commonwealth* v. *Minor*, 47 Mass. App. Ct. 928 (1999), for example, there was no evidence that anyone else was involved with the defendant in buying drugs. The defendant in *Commonwealth* v. *Mitchell*, 47 Mass. App. Ct. 178 (1999), was alone when he approached a car and negotiated with the driver for drugs. On being apprehended by police, he said he "was just trying to make some money for Christmas." *Id.* at 182. In *Commonwealth* v. *DePalma*, 41 Mass. App. Ct. 798 (1996), we held that a "*Johnson* [simple joint possession] instruction is warranted only in those situations where the parties *simultaneously* and jointly acquire the controlled substance for their own use." *Id.* at 804 & n.4 (emphasis original). In *DePalma*, the evidence that the defendant had purchased 1,000 grams of cocaine (an amount sufficient to warrant an inference beyond a reasonable doubt of intent to distribute) and had made statements to an undercover police officer about future purchases supported a reasonable inference that the defendant was in the business of trafficking in cocaine. An instruction that the jury could convict him of simple joint possession was not warranted where, in addition, the defendant purchased and took possession of drugs from the undercover police officer out of earshot of his joint venturer. Compare *United States* v. *Swiderski*, 548 F.2d at 448 (simple joint possession instruction required where defendant and his fiancée sampled cocaine offered by seller, defendant paid for and took possession of the drugs, and upon arrest shortly thereafter the drugs were found in fiancée's purse). We conclude that it was error not to give the requested instruction.

2. *Required finding on firearm charge.* The defendant contends that the trial judge improperly denied his motion for a required finding of not guilty of unlawful possession of a firearm, made at the close of the Commonwealth's case, because there was no direct evidence that the defendant possessed the handgun recovered by police from the vehicle after he had fled.

Guilt was established under a theory of constructive possession, which requires proof that the defendant had "knowledge

[of the weapon] coupled with the ability and intention to exercise dominion and control [over it]." *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 599 (1996), quoting from *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567-568 (1980).[5]

"We view the evidence at trial in the light most favorable to the Commonwealth, and determine 'whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Commonwealth* v. *Grandison*, 433 Mass. 135, 140 (2001), quoting from *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000) (emphasis original). Based on this view of the evidence, the jury could have found that during the confrontation outside the apartment where the drug sale took place, the defendant and McBride, both using handguns, assaulted the woman they believed had taken the drugs. They left the scene in a car driven by Miller[6]; the defendant sat in the front passenger seat, and McBride rode in the rear passenger seat. Subsequently, when police stopped the vehicle, the defendant fled on foot. When the defendant was apprehended a short while later, he had no gun in his possession. A gun later was found on the floor of the vehicle from which he had fled, in front of the back seat where McBride had been sitting. "These facts were sufficient to permit a reasonable jury to conclude beyond a reasonable doubt that [the defendant] knowingly had in his possession, actual or constructive, or under his control in a vehicle, either alone or jointly with others, a loaded or unloaded firearm." *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. at 599-600. See also *Commonwealth* v. *Gizicki*, 358 Mass. 291, 297 (1970) ("Gizicki's participation in a criminal enterprise jointly with the others involving his use and occupancy of the vehicle warranted the submission to the jury of the issue of his knowledge of the fact that the machine gun was in the vehicle"); *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998) (upholding conviction of possession

---

[5]We therefore need not reach the argument that there was insufficient evidence to support conviction on the basis of joint venture possession, or concern ourselves with the fact that the jury were not instructed on this theory.

[6]There was no evidence as to ownership of the vehicle.

of gun based upon reasonable inference that defendant constructively possessed gun). As in *Sadberry,* we think that in this case "it is also reasonable to infer, that if he did not place [the gun on the floor in front of the back seat], he would have been aware of [his companion's] placement of the gun there. . . . By virtue of the gun's location [on the floor behind him], the defendant had easy access to it and thus the ability to exercise control over it." *Ibid.* Here, the evidence of the defendant's prior assault with a gun and the presence of a gun in the car was sufficient to support a reasonable inference of the defendant's intent to exercise control over the gun that was found in plain view. There was no error in the judge's denial of the motion for a directed verdict.

We reverse the judgments of conviction for trafficking in cocaine and trafficking in cocaine within 1,000 feet of a school zone, and the verdicts are set aside. The remaining judgments are affirmed.

*So ordered.*