Commonwealth *vs.* Joseph Frongillo (No. 1).

No. 04-P-1459.

Suffolk. February 15, 2006. - July 10, 2006.

Present: Laurence, Doerfer, & Mills, JJ.

*Firearms. Evidence,* Constructive possession. *Practice, Criminal,* Required finding.

Evidence presented at a criminal trial, viewed in the light most favorable to the Commonwealth, was insufficient to permit any rational trier of fact to find beyond a reasonable doubt that the defendant had constructive possession of the firearms and ammunition discovered by police inside two closets in an apartment occasionally occupied by the defendant. [680-686]

Indictments found and returned in the Superior Court Department on June 28, 2001.

The cases were tried before *Patrick F. Brady,* J.

*Michael A. Cioffi* for the defendant.

*Christina E. Miller,* Assistant District Attorney (*Mark A. Hallal,* Assistant District Attorney, with her) for the Commonwealth.

Doerfer, J. The defendant was convicted by a Superior Court jury of two counts of unlawful possession of a firearm without a firearm identification (FID) card, G. L. c. 269, § 10(*h*), and one count of unlawful possession of ammunition without an FID card, G. L. c. 269, § 10(*h*). During the investigation of a shooting incident in which the victim identified the defendant as the shooter,[1] the police discovered two firearms and some ammunition in two closets in an apartment occasionally occupied by the defendant. There was no claim that these items

---

[1]The investigation of the shooting incident resulted in the conviction of the defendant on three other indictments: assault with intent to murder; assault and battery by means of a dangerous weapon; and possession of a firearm, "not being present in his residence or place of business, not having in effect a license."

had any connection to the shooting incident. The appeals of the convictions on those other indictments relating to the shooting do not present any remarkable appellate issues and are disposed of in a memorandum and order pursuant to rule 1:28 also issued this day. *Commonwealth* v. *Frongillo (No. 2), post* 1115 (2006).

At the close of the Commonwealth's case and at the close of all the evidence,[2] the judge denied motions for a required finding of not guilty on the three indictments charging violations of G. L. c. 269, § 10(*h*). The issue we review in this opinion is whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to permit any rational trier of fact to find beyond a reasonable doubt that the defendant had constructive possession of the firearms and ammunition discovered by the police inside two closets. See *Commonwealth* v. *Sespedes*, 442 Mass. 95, 96 (2004). We conclude that there was insufficient evidence to sustain a finding of constructive possession.

*Facts.* The evidence relating to constructive possession was as follows. The police, who were looking for the defendant and for evidence relating to a shooting, went to an apartment located at 428 Revere Street in Winthrop.[3] Lisa Carrozza, the woman who was renting the Winthrop apartment, answered the door, allowed the police to enter, and consented to a search. Carrozza was the defendant's fiancée at that time. The defendant was not present in the apartment. In response to questions from the police, Carrozza led them to two closets. In a bedroom closet, the police found a .22 caliber revolver, which was not stored in

---

[2] "[W]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case." *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 198 (2006), quoting from *Commonwealth* v. *Sheline*, 391 Mass. 279, 283 (1984). Here, the Commonwealth's case did not deteriorate, so we need not consider the state of all the evidence. See *Commonwealth* v. *Platt*, 440 Mass. 396, 404 & n.9 (2003). Compare *Commonwealth* v. *Walker*, 401 Mass. 338, 343-344 (1987).

[3] In searching for the defendant, there was testimony that the police went to at least three residences, including the apartment in Winthrop and the apartment of the defendant's sister in Chelsea. A police department report identified the address of the defendant to be 425 Washington Avenue in Chelsea, where the defendant's sister and mother lived.

a case, and a locked gun case that was later found to contain ammunition, but no firearm.[4] The defendant's fingerprints were not found on the revolver. The closet, which had a door but no locks, contained both men's and women's clothing, as well as towels and videotapes. There was no evidence as to the size or other identifying information of the men's clothing relative to either the defendant or Carrozza's husband, who had been living in the apartment before he moved out several months earlier.

In a second closet located in a common area near the living room, the police recovered another firearm case containing a shotgun and shotgun ammunition. The shotgun case was "being blocked by something," apparently a plastic bag that, upon removal, revealed the case.[5] This closet also contained unidentified men's and women's clothing,[6] as well as a mop and other household items. Neither the defendant nor Carrozza had a license to carry a firearm or an FID card.

The apartment is located on the first floor of a two-family house and includes a finished basement.[7] The landlord, who occupied the upstairs unit, testified that he frequently saw the defendant at the apartment after Carrozza's husband left. The landlord had not seen the estranged husband in more than three months prior to the night of the shooting. Two to four weeks after the husband moved out, the landlord observed the defendant at the apartment at all hours of the day, even when Carrozza was not there. The landlord often saw a car driven by the defendant parked in the driveway in the daytime and overnight. He saw the defendant daily at the apartment after the shooting incident and observed him moving things out on the last day he was seen there. After her husband moved out, Carrozza paid the rent in cash or, occasionally, by check. The

---

[4]The gun case was "consistent with a case that would hold a firearm, particularly a pistol."

[5]A police detective testified that by looking at the plastic bag covering the shotgun case, one would not be able to say definitively what it was.

[6]The testimony described the men's clothing as "tend[ing] to be from a male that was large in size, not a child or an adolescent."

[7]There was a master bedroom on the first floor and two bedrooms in the basement, one for Carrozza's six year old daughter and another small bedroom that appeared to be used for storage, as the landlord had observed "boxes everywhere."

defendant did not pay rent to the landlord and was not listed on the lease. There was no evidence that any personal belongings or other items containing the defendant's name, such as bills, letters, or identification, were found in the apartment.

*Discussion.* To permit a finding of constructive possession there must be evidence sufficient to infer[8] that the defendant not only had knowledge of the items, but also had the ability and intention to exercise dominion and control over them. See, e.g., *Commonwealth* v. *Sann Than*, 442 Mass. 748, 751 (2004). Our review of the evidence persuades us that, although the evidence was sufficient to permit a reasonable inference that the defendant had knowledge of the items and an ability to control them, there was insufficient evidence on the element of his intent to do so.[9]

The jury could reasonably infer that the defendant resided in

---

[8]A finder of fact may rely on common sense when analyzing the evidence and the reasonable inferences that follow. See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991); *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 240 (1997). The Commonwealth is not required to "exclude every reasonable hypothesis of innocence" since an inference "need not be necessary and inescapable," but only "reasonable and possible." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 618, quoting from *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). However, "[s]uspicion alone . . . is not enough" to establish the defendant's relationship to contraband. *Commonwealth* v. *Boria*, 440 Mass. 416, 421 (2003). See *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 779 (1991) (evidence was insufficient to support the "charge beyond unacceptable conjecture or surmise"); *Commonwealth* v. *Brown*, 50 Mass. App. Ct. 253, 258 (2000). "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Caraballo*, 33 Mass. App. Ct. 616, 619 (1992), quoting from *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979). Furthermore, "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense. . . . Nor may a conviction rest upon the piling of inference upon inference or conjecture and speculation." *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689-690 (1991), quoting from *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991).

[9]Because possession cases carry an element of intent and thus are heavily dependent upon the specific facts of the case, "precedent [is] a somewhat imperfect guide." *Commonwealth* v. *Caraballo*, 33 Mass. App. Ct. at 619, quoting from *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984). See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619; *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 554 (1991) ("each such prosecution turns on its own singular facts"). However, certain general principles have emerged. Residential

the apartment or at least spent a great deal of time there. He and his car were frequently sighted by the landlord[10]; the closets contained men's and women's clothing; and Carrozza's husband had moved out, permitting a reasonable inference that the clothes did not belong to him.[11] Although not overwhelming, taken in the light most favorable to the Commonwealth, this evidence provided a sufficient basis for a juror to infer that the defendant knew about and had the ability to exercise dominion

status is a "relevant inculpatory factor" to be considered, since it indicates more than mere presence. *Commonwealth* v. *Handy*, 30 Mass. App. Ct. at 781 n.5. *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 505 (1998). See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619 (evidence of a property interest in the premises is a "kind of circumstantial evidence thought *persuasive* on the question of knowledge or constructive possession in particular" [emphasis added]). Evidence that the defendant "rented, occupied, spent a great deal of time at or exercised control over" a dwelling is *relevant. Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689 (1991). See *Commonwealth* v. *Araujo*, 38 Mass. App. Ct. 960, 961 (1995); *Commonwealth* v. *Amparo*, 43 Mass. App. Ct. 922, 923 (1997); *Commonwealth* v. *Schmieder*, 58 Mass. App. Ct. 300, 303 (2003). However, "the occupant of an apartment does not necessarily have possession of everything in it." *Commonwealth* v. *Rosa*, 372 Mass. 697, 699 (1977).

[10]While the landlord testified that he saw the defendant at the apartment frequently, there was no testimony specifically identifying the last time the defendant was seen there prior to the shooting. Compare *Commonwealth* v. *Xiarhos*, 2 Mass. App. Ct. 225 (1974) (submission to the jury appropriate where defendant was a "current tenant," had been observed daily at the apartment during the month preceding his arrest, and police found personal papers bearing defendant's name in the apartment, as well as heroin in a closet in which unidentified men's clothing was found); *Commonwealth* v. *Duffy*, 4 Mass. App. Ct. 655, 660 (1976) ("no evidence tending to tie the defendant to the trailer on the day of the search," "no surveillance of the defendant entering and leaving the premises several times in a specific period immediately before the search," and the last time the defendant was seen at the trailer was six days prior to the discovery of marijuana).

[11]Although inferences need not be inescapable, *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 618, we observe that it is not uncommon for parties to leave clothes or other personal belongings in a former residence, depending on the circumstances of departure and the specific facts of each case. See *Commonwealth* v. *Pursley*, 2 Mass. App. Ct. 910, 910 (1975) (evidence of constructive possession was insufficient even though the defendant, who had not been observed at his girlfriend's apartment for two months prior to the search, admitted that he had left some clothing there); *Commonwealth* v. *Schmieder*, 58 Mass. App. Ct. at 304 n.5 ("circumstances of [former tenant's] departure [under police supervision] make it unlikely that [he] would have taken from the unit all contraband belonging to him").

and control over the guns and ammunition discovered in the bedroom and common area closets. See *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976) (heroin, found in various generally inaccessible locations in the defendant's apartment, warranted an inference that the defendant had placed it there or had at least known of its existence); *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 237 (1997) (ability to exercise control is apparent from the defendant's right of access).

However, proof of the defendant's intent to exercise dominion and control is substantially weaker. See *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623, 628 (2000). See also *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 168 (1995) (reasonable inference that the defendant was aware of the presence of drugs discovered in the apartment, but insufficient to show that the defendant had the ability and intention to exercise dominion and control over the drugs). In general, intent to exercise control "is not easily susceptible of proof and is a close question." *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998). In *Delarosa*, the court affirmed the conviction of possession of cocaine, but reversed the conviction of possession of a firearm, even though the drugs and gun were discovered in the same hidden compartment of a closet. Although "not overwhelming," the court determined there was sufficient evidence connecting the defendant to the apartment[12] and to infer that the defendant *knew* there was a substantial amount of high quality cocaine in the closet and that he *exercised* dominion and control over the cocaine by removing seventy grams, putting it into a McDonald's bag that he also removed from the hidden compartment, and then leaving the apartment with it. *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. at 628. The court reasoned, however, that the evidence relating to the gun found in the same closet was "substantially weaker," and although "it seems likely" that the defendant knew the gun was

---

[12]In *Delarosa*, while no personal effects were found connecting the defendant to the apartment, the building manager testified that the defendant had been staying in the building for a few months and had paid rent for that apartment a couple of times. Furthermore, a police officer had personally observed the defendant leave the apartment prior to his arrest in his car, and the key ring in the car's ignition contained a key that opened the apartment door. *Commonwealth* v. *Delarosa, supra* at 624-626.

in the closet, the evidence was not sufficient to establish "that he intended to or did exercise dominion or control over it." *Ibid.* The court observed that the gun "was not in the Honda [which the defendant was driving when stopped by the police] or on the defendant's person at the time of his arrest. Nor was there evidence . . . of a personal connection between the defendant and the room in which the stash was located." *Ibid.*

Similar to the situation in *Delarosa,* here the guns and ammunition discovered in the Winthrop apartment were not found on the defendant's person. Indeed, the defendant was not present at (or in the vicinity of) the apartment at the time of the search.[13] Although he had access to the closets, and thus knowledge of

_____

[13]While presence is not required, we note that when the defendant is present at or near the scene where the contraband is found (as is often the situation in constructive possession cases) the behavior of the defendant generally provides a basis upon which the court determines whether there was sufficient evidence relating to possession, including evidence of consciousness of guilt revealed by suspicious movements or actions, attempted flight, and proximity to contraband in plain view or hidden. See, e.g., *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 410 (1989) (evidence included defendant's presence in the apartment, which was rented to him and his girlfriend; his retreat into the closet that contained the cocaine and other drug related items; a large amount of money discovered on the defendant; and drug packaging material in plain view); *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990) (knowledge inferred from the defendant's gesture); *Commonwealth* v. *Arias,* 29 Mass. App. Ct. 613, 619 (1990) (evidence of intent to control the premises and its contents included the defendant's presence in a heavily barricaded, sparsely furnished apartment at an early morning hour in the absence of the owner or tenant); *Commonwealth* v. *Caraballo,* 33 Mass. App. Ct. 616, 619 (1992) (consciousness of guilt could not reasonably be inferred from defendant's failure to answer questions from men he did not know were police officers); *Commonwealth* v. *Cruz,* 34 Mass. App. Ct. 619, 623 (1993) (evidence of the defendant running from one room to another does not show that he made an effort to flee the apartment or to protect the contraband); *Commonwealth* v. *Amparo,* 43 Mass. App. Ct. 922, 924 (1997) (attempted flight and possession of a beeper insufficient to prove ability and intent to control drugs); *Commonwealth* v. *Antonio,* 45 Mass. App. Ct. 937, 938 (1998) (inference of unlawful possession may be drawn from the defendant's actions at the scene, including preventing police from entering, attempted flight, and acting nervous). See also *Commonwealth* v. *Fiore,* 9 Mass. App. Ct. 618, 623-624 (1980) (jury could infer defendant had dominion and control over marijuana discovered in secured cellar in Brimfield cottage where the defendant, found in his East Longmeadow home, possessed keys to the cottage's locks and drug accounting notebooks corresponding to evidence in the cottage, and where numerous bills and papers addressed to the defendant's home, including directions to the cottage, were found in the cottage); *Commonwealth* v. *Fennell,* 13

the items and the ability to control them could be inferred, such evidence was insufficient to permit a reasonable inference that he intended to exercise dominion and control over them. See *ibid.* Except for the unidentified men's clothing, there were no other personal effects connecting the defendant to the guns and ammunition found in the closets. See *Commonwealth* v. *Rarick,* 23 Mass. App. Ct. 912, 912 (1986) (possession may be inferred "from evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship").[14] There was also no other evidence connecting the defendant to the guns and ammunition. See *Commonwealth* v. *Brown,* 50 Mass. App. Ct. 253, 257 (2000) (no direct evidence of possession, "such as by observation, fingerprints, or paraffin tests").

Furthermore, evidence of the defendant's involvement in a shooting is insufficient in this case to permit an inference that he had constructive possession of unrelated firearms and ammunition found in the apartment. See *Commonwealth* v. *Caterino,* 31 Mass. App. Ct. 685, 689 & n.8 (1991) ("behavior suggesting that the defendant may have been guilty of some of-

---

Mass. App. Ct. 910, 910-911 (1982) (although the defendant was not observed during the period the apartment was under surveillance, he did arrive while the search was in progress). Contrast *Commonwealth* v. *Duffy,* 4 Mass. App. Ct. 655, 660 (1976); *Commonwealth* v. *Booker,* 31 Mass. App. Ct. 435, 438 (1991); *Commonwealth* v. *Delarosa,* 50 Mass. App. Ct. at 628 (all cases in which the court specifically notes the defendant's absence at the time the police discovered contraband and concludes there was insufficient evidence of constructive possession).

[14]See also *Commonwealth* v. *Pursley,* 2 Mass. App. Ct. 910, 910 (1975) ("meager evidence" insufficient to warrant a finding of possession, even assuming that a suit coat, which contained both heroin and personal papers in the pocket, belonged to the defendant); *Commonwealth* v. *Handy,* 30 Mass. App. Ct. 776, 778 (1991) ("Although the police looked deliberately, their search uncovered no books, papers, clothing or other belongings linking [the defendant] to the second floor where the drugs were found or to occupancy of the house"). Compare *Commonwealth* v. *Sanchez,* 40 Mass. App. Ct. 411, 416 (1996) (police found birth certificate, beeper bill addressed to the defendant, business cards with beeper number; jury could make probable inference that the defendant, with small build, owned the small-sized clothing in a suitcase that also contained drugs); *Commonwealth* v. *Washington,* 50 Mass. App. Ct. 167, 169 (2000) (defendant's identification card provided the necessary nexus between the defendant and the contraband discovered in a pair of pants in the bedroom).

fense [including carrying large amounts of cash, suspicious remarks to police, and possession of a single lorazepam pill] does not show that he had the ability and intent to control the drugs seized from [the] apartment"; evidence of the defendant's prior drug dealing and other narcotics related activity could not be considered "as evidence of his commission or propensity to commit the crime for which he [stood] charged").[15] Compare *Commonwealth* v. *Blevins*, 56 Mass. App. Ct. 206, 212 (2002), in which the defendant, using a handgun, assaulted a woman and then left the scene of the assault in a car. The police stopped the car and found a gun on the floor. The court stated that "evidence of the defendant's prior assault with a gun and the presence of a gun in the car was sufficient to support a reasonable inference of the defendant's intent to exercise control over the gun that was found in plain view." *Ibid.* Contrary to the situation in *Blevins*, in the present case, the guns found in the Winthrop apartment closets were not affiliated with the gun used in the unrelated shooting, which was never recovered.

While spending a great deal of time in the apartment may be a relevant inculpatory factor, it is not sufficient on the facts of this case, even combined with the unidentified men's clothing (and the use of a gun in an unrelated shooting), to support a finding of intent to exercise dominion and control over the contraband found in the apartment closets. See *Commonwealth* v. *Boria*, 440 Mass. 416, 418-419 (2003) (evidence of a connec-

---

[15]But see cases where evidence of prior dealing, use, or possession of *drugs* could properly be considered where the recency of drug deals, or similarity in packaging and quality of drugs, were relevant on the issue of the defendant's intent to exercise control over the drugs as a continuing enterprise. *Commonwealth* v. *Watson*, 36 Mass. App. Ct. 252, 259-260 (1994) (defendant's active participation in two recent cocaine sales to an undercover police detective in packages similar to the hidden stash and the defendant's readiness for a third drug sale on the day of the seizure indicated that the defendant "could produce cocaine from the hidden stash on demand"); *Commonwealth* v. *Washington*, 50 Mass. App. Ct. 167, 169 (2000) ("inference that the defendant was the drug-selling occupant of the third-floor bedroom was strengthened by the fact that he was seen on the day of the search selling drugs"). See also *Commonwealth* v. *Boria*, 440 Mass. at 419, quoting from *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 238 (1997) ("the peril is that the [constructive possession] doctrine may be used in narcotics prosecutions as support for preexisting suspicions rather than as an abstraction fostering fair analysis").

tion to the apartment, including the defendant's statements that she lived there and discovery of her personal identification papers, did not demonstrate constructive possession of drugs where there was no evidence linking the defendant to the cocaine or other drug paraphernalia); *Commonwealth* v. *Cruz,* 34 Mass. App. Ct. 619, 622 (1993), quoting from *Commonwealth* v. *Booker,* 31 Mass. App. Ct. 435, 437-438 (1991) (possession is not proved "by sharing the premises where the narcotics were found"). Contrast *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990) (ability and intention to exercise dominion and control over a large amount of drugs was shown from evidence of defendant's residency in a small one-room cottage; police also found personal papers, drug paraphernalia in plain view, and a drug transaction sheet near the telephone in close proximity to the defendant, and the defendant only began to speak as the police got closer to the shelf that contained the drugs); *Commonwealth* v. *Fennell,* 13 Mass. App. Ct. 910, 911 (1982) ("in addition to evidence indicating that the defendant was a 'current tenant' . . . , there was considerable additional evidence connecting the defendant with the controlled substances found in the apartment"); *Commonwealth* v. *Rarick,* 23 Mass. App. Ct. at 913 (jury could infer defendant was in possession of marijuana found in bedroom of shared dwelling where marijuana was discovered near defendant's personal belongings, including personal identification papers and a personalized roach clip); *Commonwealth* v. *Rivera,* 31 Mass. App. Ct. 554, 556-557 (1991) (ample circumstantial evidence from which jury could infer constructive possession of the contraband found in the closet where the defendant, who was present during the search, lived in the apartment and had personal belongings in various locations throughout the bedroom in which the closet was located).

Accordingly, the defendant's motion for a required finding of not guilty should have been allowed.

The judgments of conviction on the three indictments for possession of a firearm and ammunition pursuant to G. L. c. 269, § 10(*h*), are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for entry of a finding of

not guilty on these indictments. The judgments on the remaining indictments are affirmed.

*So ordered.*