## COMMONWEALTH *VS.* SANN THAN.

Middlesex. October 4, 2004. - November 10, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Firearms. Motor Vehicle,* Firearms. *Practice, Criminal,* Instructions to jury.

At the trial of a criminal complaint charging possession of a handgun without a license, the judge properly denied the defendant's motions for a required finding of not guilty, where the evidence warranted a reasonable inference that the defendant knew of the presence of the handgun in his automobile and had the ability and intention to exercise control over it. [750-752]

At the trial of a criminal complaint charging possession of a handgun without a license, the judge's instructions on the elements of constructive possession did not give rise to a substantial risk of a miscarriage of justice, where the instructions, viewed as a whole, adequately informed the jury that in order to convict the defendant in the absence of evidence of actual physical possession, they were required to determine, beyond a reasonable doubt, that the defendant had knowledge of the handgun and control over it, and furthermore that a determination of control required evidence that the defendant had both the ability and the intention to exercise control over the handgun [752-755]; further, the defendant failed to demonstrate that offhand remarks made by the judge minimized the importance of the instructions on possession, or that the judge's instructions lessened the Commonwealth's burden of proof on the intention element [755-756].

COMPLAINT received and sworn to in the Lowell Division of the District Court Department on October 4, 1999.

A motion to dismiss was heard by *Patricia G. Curtin,* J., and the case was tried before *William E. Melahn,* J.

*Peter A. D'Angelo,* Assistant District Attorney, for the Commonwealth.

*Debra S. Krupp,* Committee for Public Counsel Services, for the defendant.

GREANEY, J. A jury of six in the District Court convicted the defendant of possession of a firearm (a Colt .45 caliber semi-automatic handgun) without a license, in violation of G. L. c. 269, § 10 (*a*). Police officers discovered the handgun protruding from under the front passenger seat of an automobile in

which the defendant attempted to flee after running from a brawl outside Shooters Sports Bar in Dracut. On appeal, the defendant argued that his pretrial motion to dismiss should have been granted because the Commonwealth destroyed potentially exculpatory evidence when it conducted ballistics testing on the handgun in violation of a court order to preserve fingerprint evidence. The defendant also challenged the sufficiency of evidence allowing the jury to find that he constructively possessed the handgun. Finally, the defendant claimed that the judge's (unobjected to) instructions to the jury on the elements of constructive possession were so confusing that they gave rise to a substantial risk of a miscarriage of justice. The Appeals Court concluded that the motion to dismiss had been properly denied, but agreed with the defendant that the jury instructions were inadequate and likely to have caused a miscarriage of justice. Consequently, the Appeals Court reversed the defendant's judgment of conviction. See *Commonwealth* v. *Sann Than*, 59 Mass. App. Ct. 410, 414 (2003). We granted the Commonwealth's application for further appellate review, limited to the issues of the sufficiency of the evidence and the adequacy of the judge's instructions. We now affirm the judgment of conviction.

The evidence, considered in the light most favorable to the Commonwealth, permitted the jury to find the following facts. At approximately 1:30 A.M. on October 3, 1999, a fight involving twelve to fifteen people broke out in the parking lot of Shooters Sports Bar in Dracut. Three police officers[1] arriving on the scene observed four males running from the disturbance. Several individuals in the crowd gestured to the officers, pointed at the four fleeing individuals, and shouted, "He's got a gun, he's got a gun." The officers immediately drew their service weapons and gave chase after the four men. Although the officers commanded the men several times to stop, the four continued running across the parking lot. The pursuit came to an end at the far corner of the parking lot, as the fleeing men

---

[1]One officer, in full uniform, was working, on behalf of the Dracut police department, a paid detail for Shooters Sports Bar. The other two officers, also members of the Dracut police department, were off duty at the time of the events related above.

approached a four-door white Honda Civic automobile, jumped in, and started the engine.

The officers caught up before the Honda began to move and while the driver's side door was still partially open. One officer stationed himself in front of the automobile on the driver's side, and ordered the person seated in the driver's seat (subsequently identified as the defendant) to show his hands. Although the officer repeatedly commanded the defendant to show his hands, the defendant did not comply, but instead kept his hands hidden from the officer's view. The defendant then leaned forward and over to the right. He sat straight back up in his seat and raised his hands. As the defendant sat up in his seat, the man in the front passenger seat made a forward movement. The defendant then showed his empty hands to the officer, and, keeping his hands in plain sight, got out of the automobile and was secured by police officers, along with his three companions, on the ground.

A subsequent search of the Honda revealed a handgun lying on the floor mat of the vehicle's front passenger side. The weapon was easily spotted because its entire handle, and a portion of the barrel, extended out from under the seat, in plain view of the officer conducting the search, who was standing outside of the open front passenger side door. The handgun was lying closer to the driver's side than to the window side of the floor mat and (the jury could reasonably infer) would also have been within the vantage point of anyone seated in the driver's seat, because the interior of the automobile was compact and only a small console area separated the two front seats. The officer knelt down and grabbed the handgun. He cleared the weapon by removing a round from the chamber, removed the magazine (which contained three more rounds), and then slid the handgun in his waistband. The defendant was charged by a complaint in the Lowell Division of the District Court Department with possession of a handgun without a license.[2]

1. The judge denied the defendant's motions for the entry of a required finding of not guilty presented at the close of the

---

[2]Other charges against the defendant based on the same incident, of public drinking (dismissed) and disorderly conduct (required finding of not guilty), are not part of this appeal.

Commonwealth's case and at the close of all the evidence. The defendant argues that the Commonwealth's proof was insufficient to sustain the conviction because no rational jury could have determined, beyond a reasonable doubt, that the defendant, who was seated in the driver's seat of the vehicle, could have possessed the handgun found under the front passenger seat. We disagree.

The Commonwealth proceeded on the theory that the defendant constructively possessed the handgun. See *Commonwealth* v. *Sespedes, ante* 95, 99 (2004); *Commonwealth* v. *Daley,* 423 Mass. 747, 752 (1996). "Constructive possession" requires proof that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Sespedes, supra,* quoting *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989); *Commonwealth* v. *Ortega,* 441 Mass. 170, 174 (2004); *Commonwealth* v. *Boria,* 440 Mass. 416, 418 (2003); *Commonwealth* v. *Garcia,* 409 Mass. 675, 686 (1991); *Commonwealth* v. *Rosa,* 17 Mass. App. Ct. 495, 498 (1984). The Commonwealth may prove knowledge of the contraband by circumstantial evidence, see *Commonwealth* v. *Sespedes, supra,* and the defendant concedes in his brief that the evidence warrants a reasonable inference to that effect. The evidence also warrants the reasonable inference that the defendant had the ability and the intention to exercise control over the handgun found in the vehicle.

The defendant's conviction was based on evidence that, as he and others fled from the disturbance outside the sports bar, a crowd of people yelled, "He's got a gun." When stopped by the police, the defendant first leaned forward and to the right before complying with the order to raise his hands. A loaded handgun was found protruding from under the passenger seat in the vehicle he was operating. It could be reasonably inferred that the defendant had hurriedly placed the handgun under the passenger seat before raising his hands to the police.[3] This is not a case where the defendant was merely present in an automobile in which a handgun was found. See, e.g., *Commonwealth* v.

---

[3]The defendant suggests that this inference is undercut by evidence that the passenger also leaned forward. The sequence, however, was that the defendant did so first, and the passenger's subsequent movement suggests that the pas-

*Brown,* 401 Mass. 745, 747 (1988); *Commonwealth* v. *Benne-field,* 373 Mass. 452, 453 (1977). His motions for a required finding of not guilty were properly denied.

2. We now consider the defendant's challenge to the judge's instructions on the elements of constructive possession. The defendant claims that the instructions require reversal because they contained a mixture of correct (requiring knowledge, ability to control, and intention to control) and incorrect instructions (requiring only knowledge and control, or only ability and intention to control) that rendered the charge "misleading and confusing." The defendant did not object to the instructions, so we review for any error that could have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Whitman,* 430 Mass. 746, 750 (2000); *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 (2000). Our duty is to look at "the charge as a whole to determine whether it fairly instructs the jury." *Commonwealth* v. *Richardson,* 429 Mass. 182, 185 (1999), quoting *Commonwealth* v. *Raymond,* 424 Mass. 382, 386 (1997). Examining the charge in its entirety, we discern no error.

The judge correctly instructed the jury that in order to convict the defendant of the charge of unlawful possession of a firearm, the Commonwealth must prove, beyond a reasonable doubt: (1) possession or control of a handgun in a vehicle; (2) that the handgun met the legal definition of a firearm; and (3) knowledge, on the part of the defendant, that he possessed or controlled the handgun. The judge then cautioned the jury that "to establish that a firearm was under the defendant's control in a vehicle it is not enough for the Commonwealth just to prove that the defendant was present in the same vehicle as the firearm." To emphasize the latter point, the judge advised the jury, four times, in the language set forth below,[4] that, in order to convict the defendant, the Commonwealth must prove

---

senger was acting in response to the defendant's placing the gun under the seat (e.g., trying to push it farther underneath), not putting it there himself.

[4]"Now to establish that a firearm was under the defendant's control in a vehicle it is not enough for the Commonwealth just to prove that the defendant was present in the same vehicle as the firearm. . . . [1] The Commonwealth must also prove that the defendant knew that the firearm was there and that the defendant had the power to exercise control over the firearm although this did not have to be exclusive control. As I mentioned before, [2] the Com-

that the defendant knew that the handgun was in the vehicle and that he had control (although not necessarily exclusive control) over it. Taken in context, these instructions could not have misled the jury because they plainly were intended to delineate the elements of knowledge and control and were used as a prelude to the instructions we next describe on constructive possession.[5]

The judge then told the jury that he was going to read them some definitions of possession and instructed as follows:

> "What does it mean to possess something? A person obviously possesses something if he has direct physical control or custody of it at a given time. In that sense, you possess whatever you have in your pocket or purse at this moment. However the law does not require that someone have actual physical custody of an object to possess it. An object is considered to be in a person's possession if he has the ability to exercise control over that object either directly or through another person. For example, the law considers you to be in possession of things which you

monwealth must prove beyond a reasonable doubt that the defendant knew that he possessed this item or had it under his control in the vehicle and also knew that the item was a firearm within the common meaning of that term. If it was a conventional firearm with obvious dangers, the Commonwealth is not required to prove that the defendant knew that the item met the legal definition of a firearm. As I already indicated to you, with respect to the — [3] the Commonwealth must prove that the defendant knew that he possessed the firearm or had it under his control in the vehicle. This requires you to make a decision about the defendant's state of mind at the time. It's obviously impossible to look directly into a person's mind because in our everyday affairs we often look at the actions of others in order to decide what their state of mind is. In this case you may examine the defendant's actions and words if any and all the surrounding circumstances to help you determine the extent of the defendant's knowledge at the time. You should consider all the evidence [and] any reasonable inferences you draw from the evidence in determining whether [4] the Commonwealth has proved beyond a reasonable doubt as it must that the defendant had knowledge that he was in possession of a firearm or it was under his control with knowledge in the vehicle. In considering this you may consider for example if contraband is found in open view in an area over which a person has control, it may be reasonable to infer that the person knew that it was there."

[5]The instructions given by the judge came directly from Instruction 5.60 (setting forth the elements of the offense found in G. L. c. 269, § 10 [a]) and Instruction 3.051 (explaining the element of knowledge) provided in the Model Jury Instructions for Use in the District Court (1995).

keep in your bureau drawer at home or in a safe deposit box at your bank.

"Whether the defendant possessed the firearm is something you must determine from all the facts and any reasonable inferences that you can draw from the facts. However I caution you to remember that merely being present in the vicinity of a firearm even if one knows it is there does not amount to possession.

"To show possession there must be evidence justifying a conclusion that the defendant had the power and the intention to exercise control over the firearm. Only then may the defendant be considered to have possessed the firearm.

"A person can possess something even if he's not the sole owner or holder. For example, a person is also considered to possess something which he owns or holds jointly with another person who is keeping it for the both of them. A person is also considered to possess something which he owns or holds jointly with another person and which they've agreed to deposit somewhere, but where both of them have access to it.

"Finally, it might be helpful to you. Possession implies control and power, exclusive or joint or in the case [of] constructive possession, that is when you don't have actual possession, knowledge coupled with the ability and intention to exercise dominion and control. Possession may often be inferred from proximity joined with knowledge. But the reasonableness of such an inference depends on all the circumstances."

The judge gave the above quoted instructions once in his main instructions at the close of the case and again (with the exception of the omission of the final paragraph) in response to a specific jury request for reinstruction on possession. The first four paragraphs of the judge's instructions are taken verbatim from the model instructions on possession set forth in the Model Jury Instructions for Use in the District Court. See Instruction 3.11 of the Model Jury Instructions for Use in the District Court

(1995). The final paragraph is patterned on identical language ("knowledge coupled with the ability and intention to exercise dominion and control") that this court, and the Appeals Court, have used time and again when called to define the concept of constructive possession. See, e.g., *Commonwealth* v. *Sespedes, ante* 95, 99 (2004); *Commonwealth* v. *Ortega,* 441 Mass. 170, 174 (2004); *Commonwealth* v. *Boria,* 440 Mass. 416, 418 (2003); *Commonwealth* v. *Garcia,* 409 Mass. 675, 686 (1991); *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989); *Commonwealth* v. *Delarosa,* 50 Mass. App. Ct. 623, 626 (2000); *Commonwealth* v. *Rosa,* 17 Mass. App. Ct. 495, 498 (1984). Taken as a whole, the instructions adequately informed the jury that in order to convict the defendant in the absence of evidence of actual physical possession, they were required to determine, beyond a reasonable doubt, that the defendant had knowledge of the handgun and had control over it, and, furthermore, that a determination of control required evidence that the defendant had both the ability and the intention to exercise control over the handgun.

We address two remaining challenges to the instructions raised by the defendant. The judge prefaced his instructions on possession with the following statement. "If I can find them, I'm going to give you some definitions of possession, but I've just lost them temporarily. Here it is. This is some definition of possession that might help you." We reject the defendant's claim that the statement minimized the importance of the instructions on possession. The judge's remarks were obviously made offhand while he looked through his materials to find the standardized instructions he was about to deliver. The segue was normal conversation which, if anything, may have benefited the defendant by focusing the jury's attention on the importance of the upcoming instructions. If the defendant's trial counsel had considered the judge's words in any way prejudicial, it was up to him to alert the judge to the problem. No objection was made. We also reject the defendant's claim that the judge's instructions may have lessened the Commonwealth's burden of proof on the intention element. The jury were instructed eight times on the Commonwealth's burden of proof. They also explicitly were cautioned three times that possession could not

be inferred from the defendant's mere presence in the vehicle. Viewed as a whole, the judge's instructions were correct in every essential respect. See *Commonwealth* v. *Andrade*, 422 Mass. 236, 245 n.11 (1996)

*Judgment affirmed.*