NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1149

COMMONWEALTH

vs.

DAWSON D., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, the juvenile was adjudicated delinquent for carrying a firearm without a license.  On appeal the juvenile argues that the evidence was insufficient to show that he possessed the firearm.  We affirm.[1]

---

[1] The juvenile challenged the sufficiency of the evidence through a motion for a required finding of not delinquent at the close of the Commonwealth's case and a posttrial motion to reconsider.  The Commonwealth asserts that only the order denying reconsideration is properly before us because the juvenile did not file a notice of appeal from the adjudication of delinquency itself.  We disagree.  The adjudication of delinquency entered on the docket on April 29, 2024.  After the judge denied the juvenile's motion to reconsider on May 22, 2024, the juvenile filed a notice of appeal on May 24, 2024, which was timely both as to the adjudication of delinquency and the order denying reconsideration.  See Mass. R. A. P. 4 (b), as appearing in 489 Mass. 1601 (2022).  Although the notice of appeal refers to the order denying reconsideration as the order being appealed from, that does not, as the Commonwealth

Background.  At around 2 A.M. on September 30, 2023, Shrewsbury police officer Eric Sloan was monitoring traffic when he saw a vehicle with faulty rear license plate lights, making him "unable to read the license plate from the required distance of 60 feet away."  Officer Sloan pulled his cruiser into traffic and behind the vehicle.  As he did so, the vehicle first slowed down under the posted speed limit and then "took an erratic lane change."  Officer Sloan conducted a query on the vehicle's registration, which returned a "no status found on record," indicating that the registered owner did not have a valid driver's license.

Officer Sloan activated his cruiser lights and initiated a traffic stop.  The vehicle did not pull over immediately but went an additional sixty feet, slowing to about five miles per hour before coming "to a slow, rolling stop."  While this was happening, Officer Sloan "had [his] spotlight on the back window, and [he] could see the rear passengers moving around and reaching into the back trunk area."  Both of the passengers

suggests, deprive us of jurisdiction to review the adjudication of delinquency itself.  See Mass. R. A. P. 3 (c) (1) (A), as appearing in 491 Mass. 1601 (2023) (notice of appeal in criminal case need designate only "the party or parties taking the appeal").  See also Mass. R. A. P. 3 (c) (3), 491 Mass. 1602 (2023) ("An appeal should not be dismissed for minor defects, such as . . . a technical error in how the judgment, decree, adjudication, or separately appealable order is identified, if it is otherwise clear from the notice what is being appealed").

"were turned, reaching around in the backseat or behind the backseat area."

Officer Sloan approached the vehicle, which had four occupants:  the driver, a front-seat passenger, and the two backseat passengers.  The juvenile was one of the backseat passengers.  When Officer Sloan asked the driver for his license and registration, the driver provided a name and birthdate but said he did not have a license on him and that the vehicle was a rental and had no registration.  Officer Sloan then noticed that none of the passengers were wearing seatbelts and asked for their names and birthdates.  When Officer Sloan called in the information provided, "none of the information of any of the occupants was able to be located by dispatch."[2]  Determining that nobody in the vehicle had a valid driver's license, Officer Sloan began issuing exit orders.

By this point other officers had arrived on the scene to assist.  After the juvenile and the other backseat passenger exited the vehicle, one of the officers saw, in plain view, two spent nine-millimeter shell casings on the floor of the backseat

_____

    [2] Police later learned that all of the occupants had provided false names and birthdates.  They further learned that the occupants were all sixteen years old, under the age required to obtain a license to carry a handgun.  See G. L. c. 140, § 131 (d) (iv), as amended through St. 2018, c. 123, §§ 11, 12; Commonwealth v. Quahir Q., 496 Mass. 748, 749 n.2 (2025).

3

passenger compartment.  He then discovered a nine-millimeter Sig P320 firearm under the front passenger seat.

All four occupants were placed under arrest, and the vehicle was towed to the police station.  There, officers conducted an inventory search of the vehicle.  In the rear hatchback area, there were eight or nine backpacks and "gym bags," "kind of stacked all over the place."  When one of the officers pulled down a larger bag in the middle of the pile, a nine-millimeter Taurus firearm fell down "right away" either from "between the bags" or from "on top."  The firearm was "located directly behind the rear seat," "right up against the seat back."  There was no covering over the hatchback area that would have obstructed a view of the bags.

At trial the juvenile testified in his own defense that neither firearm was his, that the Sig P320 firearm recovered from under the front seat belonged to the front-seat passenger, and that the Taurus firearm recovered from the hatchback area belonged to the other backseat passenger.  During cross-examination the juvenile admitted that he knew that the other passengers were carrying firearms.  When shown the Taurus firearm,[3] the juvenile denied having seen it before and denied

---

[3] Only the Taurus firearm was admitted in evidence, and it is clear that the judge found the juvenile delinquent based on his possession of this firearm.

having moved it right before the traffic stop.  When the prosecutor then asked -- "Did you hold the gun at all?" -- the juvenile answered, "Yes."  In response to the prosecutor's follow-up question -- "In the car?" -- the juvenile again answered, "Yes."

Discussion.  The juvenile moved for a required finding of not delinquent at the close of the Commonwealth's case.  We therefore consider the state of the evidence at that point in the trial to determine whether, in the "light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the [juvenile]," it "was sufficient . . . to permit the [factfinder] to infer the existence of the essential elements of the crime charged."  Commonwealth v. West, 487 Mass. 794, 799 (2021), quoting Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006).  The Commonwealth can meet its burden of proof by "rely[ing] entirely upon circumstantial evidence" and the inferences drawn therefrom.  West, supra at 800.  Those inferences "need only be reasonable and possible and need not be necessary or inescapable."  Id., quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).

Under a theory of constructive possession, the Commonwealth needed to show that the juvenile had "knowledge" of the firearm and "the ability and intention to exercise dominion and control" over it.  Commonwealth v. Than, 442 Mass. 748, 751 (2004),

5

quoting Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). The Commonwealth's evidence sufficed to establish these elements. Unlike in Commonwealth v. Romero, 464 Mass. 648, 656-659 (2013), on which the juvenile relies, this was not a case involving mere presence and proximity to the firearm. The Commonwealth presented additional incriminating evidence -- most significantly, evidence of the juvenile's actions just prior to the traffic stop. Based on Officer Sloan's testimony that he saw the juvenile and the other backseat passenger turning around and reaching into the hatchback area, the judge could reasonably have inferred that the juvenile was attempting to conceal, or helping the other passenger conceal, the firearm that was later found directly behind the backseat. The judge could also have viewed the juvenile's producing a false name and birthdate as evidence of consciousness of guilt. See Commonwealth v. Albano, 373 Mass. 132, 135 (1977); Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 846-847 (2010). Viewed favorably to the Commonwealth, the evidence was sufficient to prove possession. See Than, supra at 751-752 (evidence sufficient to prove that defendant possessed handgun found under passenger seat of vehicle he was driving, where he made movements from which it could be inferred he "had hurriedly placed the handgun under the passenger seat before raising his hands to the police"); Elysee, supra at 847 (jury could have found that defendant had control, though not

6

exclusive control, of firearm found under his seat in rear of vehicle, where officers observed "rocking," consistent with attempt to conceal, originating from rear seat and defendant's actions suggested consciousness of guilt); Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 594 (2007) (evidence sufficient to prove that defendant possessed firearm "found directly under the front passenger seat where the defendant had been seen shoving his feet").

Although the juvenile did not move for a required finding of not delinquent at the close of all the evidence, much of his brief focuses on the testimony that he gave in his own defense. Specifically, the juvenile argues that (a) the judge, in announcing his decision, erred by finding that the juvenile admitted to "hold[ing] the gun," when the juvenile's testimony was vague as to which gun, the Taurus or Sig P320, he was referring to and (b) the juvenile's admission to briefly holding a firearm owned by another was not, in any event, sufficient to establish possession where G. L. c. 140, § 130 1/2, allows a minor to handle a firearm in the presence of its owner. These arguments provide no basis for reversal. Where the Taurus firearm was the only one in evidence and the only one shown to the juvenile at trial, the judge could have inferred that the juvenile's admission related to that firearm in particular. More fundamentally, putting aside the juvenile's testimony, the

evidence presented in the Commonwealth's case-in-chief was sufficient to prove possession, as discussed above. Finally, to the extent the juvenile asks us to treat his motion to reconsider as a motion for a required finding of not delinquent at the close of all the evidence, he would need to show deterioration to succeed on such a motion. See O'Laughlin, 446 Mass. at 198. Deterioration occurs where the Commonwealth's evidence "is later shown to be incredible or conclusively incorrect." Id. at 203, quoting Kater v. Commonwealth, 421 Mass. 17, 20 (1995). The juvenile's testimony merely

contradicted certain aspects of the Commonwealth's evidence, which does not establish deterioration.  See O'Laughlin, supra at 203-204.

Adjudication of delinquency
affirmed.

Order denying motion to
reconsider affirmed.

By the Court (Shin, Ditkoff &
Tan, JJ.[4]),

*Paul Little*

Clerk

Entered:  June 15, 2026.

---

[4] The panelists are listed in order of seniority.