COMMONWEALTH vs. JEROLD HUMPHRIES.

No. 08-P-1963.

Suffolk. November 6, 2009. - May 13, 2010.

Present: CYPHER, SIKORA, & FECTEAU, JJ.

*Controlled Substances. Evidence,* Constructive possession.

At the trial of a criminal complaint charging possession of marijuana with
intent to distribute and a drug offense within a school zone, a Boston
Municipal Court judge erred in denying a defendant's motion for a required
finding of not guilty, where evidence that packages of marijuana, as well
as an identification card with the defendant's name and picture and an
envelope addressed to him at a different address, were found by police
during a search of a bedroom of an apartment at which the defendant was
not present, was insufficient to establish constructive possession. [703-705]
SIKORA, J., dissenting.

COMPLAINT received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on November 17,
2003.

The case was tried before *James W. Coffey,* J.

*Louis Christopher Cashiola* for the defendant.

*Elizabeth Clerkin* (*Kathleen Celio,* Assistant District Attorney,
with her) for the Commonwealth.

CYPHER, J. The defendant, Jerold Humphries, seeks to over-
turn two drug offense convictions,[1] claiming that his motion for
a required finding of not guilty after the Commonwealth's case
in chief should have been allowed. We conclude that the evidence
of constructive possession was insufficient to support his convic-
tion and we reverse.[2]

---

[1]The defendant was convicted by a Boston Municipal Court jury in
September, 2007, of (1) possession of marijuana with intent to distribute,
G. L. c. 94C, § 32C, and (2) a drug offense within a school zone, G. L.
c. 94C, § 32J.

[2]On the result we reach, we do not need to address the defendant's remain-
ing issues: that he was denied due process through the admission of drug

*Facts.*[3] A Boston police detective testified that the police executed a search warrant for an apartment at 15 Wentworth Street, in the Dorchester section of Boston, on November 15, 2003. They seized "crack" cocaine and marijuana in a back bedroom where two men were hiding in a closet, and another was "at the end of the bed." None of the three had any personal effects in the room. The defendant was not in the apartment.

In another bedroom, furnished only with a futon bed, police seized sixteen small plastic bags of marijuana in one large bag, eight larger individually wrapped bags of marijuana in another large bag, "Glad plastic bags" and small bags printed with an "apple." No one was present in the room. The police also found a Massachusetts identification card with the defendant's name and picture, and an envelope addressed to him at a different address which had been postmarked on October 27, 2003. The defendant's address on the identification card was 49 Bullard Street, the same address as appeared on the envelope. No other personal effects of the defendant, or any personal effects of the three individuals observed in the rear bedroom were found in the vacant bedroom. The defendant was charged only for the marijuana found in the room where his identification was found.

*Discussion. 1. The motion for a required finding of not guilty.*[4] The defendant argues that his motion for a required finding of not guilty should have been allowed because the evidence failed to link him with the marijuana found in the vacant bedroom. He argues that the evidence, at most, showed his presence in the apartment sometime prior to the date of the search, but because he previously had moved out of the apartment, was not the target of surveillance or the subject of the search warrant, and

evidence for which he was not charged, and that his confrontation rights were violated by the erroneous admission of certificates of drug analysis without an opportunity to cross-examine the analyst.

[3]The facts discussed are taken only from the Commonwealth's case. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976).

[4]After the Commonwealth rested, defense counsel answered "yes" to the judge's question whether he wished to move orally for a required finding. The transcript does not indicate that the judge explicitly acted on that request, nor is there any indication that defense counsel reasserted the request at the close of all the evidence. We assume from the course of the trial that the judge effectively denied the first request, and would have denied a second request if it had been made.

was not present at the time of the search, the evidence was insufficient to show that he exercised any control of the apartment or its contents. He also argues that the discovery of his identification card and a piece of mail in the vacant bedroom, with no indication where they were found or if or how they were proximately related to the marijuana, was insufficient to establish constructive possession of the marijuana.

We review the question of sufficiency of the evidence under the familiar *Latimore* standard, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), viewing the evidence in the light most favorable to the Commonwealth. To convict a defendant on a theory of constructive possession, the Commonwealth must prove beyond a reasonable doubt that the defendant had knowledge of the contraband, coupled with the ability and intention to exercise dominion and control over it. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989). In general, intent to exercise control "is not easily susceptible of proof and is a close question." *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998).

Our typical constructive possession cases tend to concern situations where the defendant is present and we turn to other incriminating evidence to determine whether there is sufficient evidence of constructive possession. See, e.g., *Commonwealth* v. *Figueroa*, 74 Mass. App. Ct. 784, 786 (2009). Here, the defendant was not present and the only indicia on the Commonwealth's case that he may have been present was an identification card in his name and an envelope addressed to him at a different address.

The identification card and the envelope did not, in and of themselves, show beyond a reasonable doubt that the defendant had knowledge of the presence of the marijuana and did not prove, even considering any reasonable inferences, that the defendant had the intent and ability to exercise dominion and control over the marijuana. Compare *Commonwealth* v. *Frongillo (No. 1)*, 66 Mass. App. Ct. 677, 682-683 (2006) (evidence was insufficient to show that defendant intended to exercise dominion and control over guns and ammunition found in bedroom closet of fiancée's apartment where defendant was in vicinity of apartment but not present at time of search and no evidence connected

defendant to guns and ammunition other than unidentified men's clothing), with *Commonwealth* v. *Schmieder*, 58 Mass. App. Ct. 300, 303 (2003) (documentary evidence that defendant rented dwelling is relevant to constructive possession). There was no evidence that the defendant "rented, occupied, spent a great deal of time at or exercised control over the apartment or its contents." *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689 (1991).

No cases have been brought to our attention, and we are not aware of any, where we have concluded that there was sufficient evidence of constructive possession despite the defendant's absence. See *Commonwealth* v. *Duffy*, 4 Mass. App. Ct. 655, 660 (1976); *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438 (1991); *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623, 628 (2000) (all cases in which court specifically notes defendant's absence at time police discovered contraband and concludes that there was insufficient evidence of constructive possession). Contrast *Commonwealth* v. *DePina*, 75 Mass. App. Ct. 842, 854 (2009) (sufficient evidence of constructive possession where defendant walked toward building in which contraband found, with set of keys that unlocked building's main door, apartment front door, and door to bedroom where drugs were found). Accordingly, we conclude that the motion for required finding should have been allowed.

> *Judgments reversed.*
>
> *Verdicts set aside.*
>
> *Judgments shall enter for the defendant.*

Sikora, J. (dissenting). Respectfully I dissent from the reasoning and result advanced by my colleagues. For the following reasons, I conclude (1) that the evidence supported the jury's verdict of guilt of constructive possession of marijuana with intent to distribute; and (2) that the admission of the drug analysis certification of marijuana constituted harmless error beyond a reasonable doubt.

1. *Proof of constructive possession.* a. *Standards.* In review

of the denial of a motion for a directed finding of not guilty, the appellate court examines the entire evidence in the light most favorable to the Commonwealth and without regard to contrary evidence presented by the defendant in order to determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Several corollaries expand upon that standard. "Circumstantial evidence is competent to establish guilt beyond a reasonable doubt." *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989), quoting from *Commonwealth* v. *Nadworny*, 396 Mass. 342, 354 (1985), cert. denied, 477 U.S. 904 (1986). *Commonwealth* v. *Rojas*, 388 Mass. 626, 629 (1983). The resulting inferences "need only be reasonable and possible; [they] need not be necessary or inescapable." *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). In the aggregate, the evidence need not compel a finding of guilt; it need only permit that finding beyond a reasonable doubt. *Commonwealth* v. *Platt*, 440 Mass. 396, 401 (2003). The prosecution does not need to "exclude every reasonable hypothesis of innocence, provided [that] the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Commonwealth* v. *Merola*, *supra* at 533, quoting from *United States* v. *Systems Architects, Inc.*, 757 F.2d 373, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985). See *Commonwealth* v. *Stoico*, 45 Mass. App. Ct. 559, 563 (1998). Determination of credibility belongs to the jury, especially if (as here) the defendant testified. *Commonwealth* v. *Festa*, 369 Mass. 419, 424-425 (1976).

To prove the specific offense of constructive possession of contraband, the Commonwealth must establish (1) the defendant's knowledge of the location of the material, and (2) his "ability and intention to exercise dominion and control" over it. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). As the majority point out, the nature of constructive possession typically requires proof by circumstantial evidence. *Ante* at 704. Mere presence in proximity to the contraband is not sufficient. Presence plus other incriminating circumstances can satisfy the standard of proof. *Commonwealth* v. *Brzezinski*, *supra* at 409-410, citing *Commonwealth* v. *Albano*, 373 Mass.

132, 134 (1977). *Commonwealth* v. *Brown*, 34 Mass. App. Ct. 222, 226 (1993). "When contraband is found in a dwelling shared by a defendant and one or more other persons, a finder of fact may properly infer that the defendant is in possession of the contraband (not necessarily exclusive possession) from evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship." *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 912 (1986).

The record indicates that the defendant moved orally under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), for a required finding of not guilty at the close of the Commonwealth's evidence. It does not show whether he renewed that motion at the close of all the evidence under Mass.R.Crim.P. 25(b)(1), 378 Mass. 896 (1979). I will assume that he did so and measure the evidence at each point. If the evidence were insufficient to permit any rational trier of fact to find the essential elements of constructive possession at the first point, he would be entitled to the directed finding. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976); *Commonwealth* v. *Latimore, supra* at 676. Typically we assess the evidence at the second point to determine whether the Commonwealth's proof deteriorated after the presentation of its case-in-chief. See *Commonwealth* v. *Sheline*, 391 Mass. 279, 283 (1984); *Commonwealth* v. *Walker*, 401 Mass. 338, 343 (1987).

b. *The Commonwealth's evidence.* The prosecution introduced the following evidence connecting the defendant to the storage of the marijuana. The bedroom holding the twenty-four bags of marijuana was almost barren. It contained none of the accessories of normal habitation (clothes, toiletries, chairs, lamps, radio, television, reading material, papers). Its contents were a futon bed, the contraband and packaging, and two personal effects of the defendant. It was functioning solely as a drug distribution chamber. Any visitor to the room would have known of that use.

The only personal effects in the room and the only personal connection to the room belonged to the defendant. One was his identification card and the other a letter addressed to his

subsequent address in an envelope postmarked on October 27, 2003. "The defendant's particular connection to the room where the [marijuana] was discovered may be inferred from the fact that his identification . . . card was found there." *Commonwealth* v. *Washington,* 50 Mass. App. Ct. 167, 168-169 (2000). "[A]n inference of possession may be drawn from the close proximity between [the defendant's] personal belongings and the drugs." *Commonwealth* v. *Antonio,* 45 Mass. App. Ct. 937, 938 (1998). The exclusivity of the defendant's connection to the bedroom strengthened proof of his possession of its contents.[1]

The condition of the room supported the inference that the defendant had not accidentally left the identification card and letter nor overlooked them in the clutter of a typically inhabited room. Aside from the futon and the marijuana, they were the only items in the room. The plausible inference was that the defendant had knowingly left them because he was returning to the room on a continuous basis. In particular, he would need his identification card, a credential of daily use comparable to that of a driver's license.

In addition, one of the police officers executing the search warrant described the quantities of cocaine and marijuana seized from the other bedroom. That testimony substantiated a scenario of drug dealing of which a visitor or occupant would reasonably have been aware. *Commonwealth* v. *Griffin,* 45 Mass. App. Ct. 396, 399 (1998), and cases cited.

In the aggregate, this circumstantial evidence placed the contraband in proximity to the defendant's personal effects, connected him to the wider scene of drug activity in the apartment, and linked him to the marijuana in the bedroom by a "particular relationship." *Commonwealth* v. *Rarick,* 23 Mass. App. Ct. at 912. As the trial judge ruled, the defendant was not entitled to a directed finding.

c. *The defendant's evidence.* Rather than cause deterioration, the defendant's evidence magnified the case against him. He revealed a familiarity with the apartment. He had recently

---

[1]See Holmes, The Common Law, 168-174 (1981) (Howe ed., Little Brown 1963) (the common law of possession reduced to two elements: physical control or the capacity for physical control over an object; and the intent to exclude others from such control).

completed a substantial occupancy. He testified that he had resided there for about two years with his aunt. As the result of her recent death, he had moved out as of the end of September, 2003. He therefore knew of the vacancy of the unit and of its availability for drug running, and could easily have retained keys for access. The jury could reasonably infer his awareness of the substantial scale of apparent dealing (three perpetrators and two rooms of inventory) springing up during the short and disputable duration (as discussed below) since his departure as a full-time resident. He provided evidence that his presence in the apartment was ongoing. In his words, the identification card was an item "which I would need to use anywhere I would go."

Finally, the defendant testified and became trapped in a falsehood about his presence in the room storing the marijuana. His direct testimony was that he had permanently left the apartment by the end of September, 2003, six weeks before the warranted search and seizure of November 15. By cross-examination the prosecutor pressed him about the presence of the letter found in the room, addressed to him at his subsequent residence, and postmarked on October 27, or about four weeks after his alleged departure.

> *Q.* "Thank you, sir. Mr. Humphries, there's one more thing though I want to ask you, just one more thing I want to ask you: You see, the thing that I have trouble understanding —"
>
> Prosecutor: "May I approach, judge?"
>
> The court: "All right."
>
> *Q.* "— is you say that you left the stuff behind, right? You say that you had left that stuff behind when you left before October 1st. The problem is, the thing I don't understand, maybe you can help me understand this is why is that postmarked after October 1st? Why is that dated after October 1st?"
>
> *A.* "Because I was living with — the address — 49 Bullard (the new residence)."

Q. "Right. But see, that's your name on there, right?"

A. "Right."

Q. "And that's your address on there, right?"

A. "Right."

Q. "But you said you were living there after you had moved out."

A. "Right."

Q. "So in other words why was that left behind? If you were already out, why was that left behind? Do you see what I'm saying? Because if you were living there after you lived at 15 Wentworth [the site of the apartment] —"

A. "*Aha.*"

(Emphasis supplied). As recounted in the margin, this line of questioning continued with no improvement in the defendant's responses.[2] The jury observed the entire course of questioning and were entitled to weigh both the defendant's inadequate

---

[2]  Q. "— you know, how could that have been left behind when you were at 15 Wentworth when you had moved there after 15 Wentworth?"

A. "It was part of the materials that I had was in my bags that I probably when I took my mail and everything some of my stuff over there, that was probably waiting."

Q. "Wait, I thought that you had moved out before October 1st?"

A. "No — exactly. But what I'm saying, when I helped my aunt out I had a couple of materials over there which was *my ID which I would need to use anywhere I would go, you know.* [Emphasis supplied]. And then I had a couple of papers, other papers, too, which was in a backpack, you know, with all my important papers."

Q. "Sure. And when you moved that out it must have fallen out or something like that?"

A. "No. I guess I forgot the bag. It was a bag and it was materials that I never retrieved or never knew that I had left at that apartment."

Q. "All right, but the thing, you see —"

answers and his demeanor as evidence of mendacity. They could justifiably view his attempted concealment of his presence in the marijuana room as evidence of consciousness of guilt. See *Commonwealth* v. *Torres*, 442 Mass. 554, 565-566 & n.9 (2004), and *Commonwealth* v. *Auclair*, 444 Mass. 348, 360-361 (2005) (lying may constitute evidence of consciousness of guilt).

PROSECUTOR: "May I approach again, judge?"

Q. "You see, the thing I don't understand, maybe you can just look at it for me, I might be just reading it wrong. Well, it says October 27, 2003 there, isn't that right?"

A. "Right."

Q. "But you said you were out of the apartment before that date though, right?"

A. "Mm-hmm."

Q. "So how is it that something postmarked October 27th, 2003 is left behind from when you moved out of there on October 1st? Do you see what I'm saying?"

DEFENSE COUNSEL: "Objection. Asked and answered, your Honor. That question has been asked."

THE COURT: "He can answer it."

Q. "It doesn't make that much sense, does it?"

A. "Yeah, it do[es] make sense."

Q. "All right."

A. "It was mail that was left — it was mail that was left behind. I was never staying in the apartment after that time."

Q. "But it couldn't be left behind, could it, Mr. Humphries, it couldn't have been left behind. It couldn't have been left behind because it is dated on a date after you had already moved out of the apartment. So that would mean you had to have brought it over. You had to have been in the apartment after —"

DEFENSE COUNSEL: "This is argumentative, your Honor."

THE COURT: "All right, just break it down frame by frame, all right. Let him answer. Let the gentleman answer."

Q. "Do you see what I'm saying, Mr. Humphries? It is postmarked a date after you said you moved out of the apartment."

A. "Okay."

Q. "It's as simple as that."

PROSECUTOR: "I have nothing further, judge."

Finally, the doctrine of constructive possession does not command the presence of the defendant simultaneously with the discovery and seizure of drugs by the police. That circumstance may strengthen the Commonwealth's evidence, but it does not constitute a requirement for conviction. Constructive possession functions as a realistic alternative to actual possession. Physical separation of the defendant from the contraband is a premise of the doctrine. We cannot feasibly require a drug dealer to be at the scene of a search at the moment at which the police execute a warrant. Evidence specifically linking the defendant to the storage site of the drugs can be sufficient for constructive possession. See *Commonwealth* v. *DePina*, 75 Mass. App. Ct. 842, 854 (2009) (police arrest the defendant outside a dwelling; his keys to the apartment and bedroom containing cocaine connect him to the contraband and permit a finding of constructive possession and trafficking).

In sum, the defendant's lengthy familiarity with and access to the apartment, the presence of his personal effects in the room, the apparent exclusivity of his connection to the room, his inferable continuing presence there, and his self-defeating testimony and demeanor provided the jury with ample evidence for a finding of constructive possession.[3]

2. *Proof of intent to distribute.* The circumstantial evidence abundantly supported a finding of intent to distribute. Typical indicia are the quantities of the contraband, *Commonwealth* v.

_____

[3]Since I resolve the question of constructive possession differently from the majority, I address the defendant's remaining contentions for complete explanation of my vote to affirm his convictions. The ensuing sections 2 and 3 respond to the arguments of insufficient proof of intent to distribute and the claimed harm from the admission of the certificates of marijuana analysis.

The defendant's final contention was that the admission of evidence of the presence of cocaine and marijuana in the second bedroom unfairly caused him prejudice. For several reasons, the admission was proper. Its probative value outweighed any prejudicial impact. The contraband in the second room illustrated the scale of operation in the apartment and the defendant's likely knowledge of that operation. *Commonwealth* v. *Griffin*, 45 Mass. App. Ct. at 399-400. Further, the trial judge emphatically instructed the jury, "I want to stress to you, [the defendant] is not charged with the cocaine possession or the marijuana from the first bedroom where the three individuals were allegedly located." Finally, the evidence served as the basis for the main hypothesis of his defense: that the marijuana imputed to him belonged to the persons in the other bedroom.

*Pratt,* 407 Mass. 647, 652-653 (1990); its packaging, *id.* at 653; and the absence of implements or paraphernalia of personal consumption; *Commonwealth* v. *Labitue,* 49 Mass. App. Ct. 913, 914 (2000). The ·twenty-four bags, comprised of sixteen smaller and eight larger units, the unfilled additional plastic bags, and the absence of any signs of habitation or use, identi-fied the bedroom as a site in a chain of distribution.

3. *Admission of the certificates of drug analysis.* The trial oc-curred in September of 2007. At that time the certificates identify-ing the nature of the marijuana were admissible under the rule of *Commonwealth* v. *Verde,* 444 Mass. 279, 282-285 (2005). The Supreme Court's decision of *Melendez-Diaz* v. *Massachu-setts,* 129 S. Ct. 2527, 2532 (2009), subsequently overruled *Verde* and rendered the certificates as tainted evidence in violation of the right of confrontation under the Sixth Amendment to the United States Constitution. Trial defense counsel objected to the admission of the first two of eight certificates upon authority of *Crawford* v. *Washington,* 541 U.S. 36, 59, 68-69 (2004). Under *Commonwealth* v. *Vasquez,* 456 Mass. 350, 355-360 (2010), the admission of all eight certificates are treated as preserved error without any requirement of timely objection by defense counsel.

Therefore under the doctrine of *Chapman* v. *California,* 386 U.S. 18, 23-24 (1967), we ask whether the admission of the certificates was beyond a reasonable doubt merely harmless error. Or does the record show "a reasonable possibility that the evidence complained of might have contributed to the convic-tion"? *Ibid.,* quoting from *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 (1963). We examine the following as useful, but not exclusive or exhaustive, factors: (1) the weight or quantum of proper evidence of guilt; (2) the importance of the tainted evi-dence to the prosecution's case; (3) the character of the tainted evidence as merely cumulative of the valid evidence or as in-dependently probative; (4) the relationship between the improper evidence and the premise of the defense; (5) the frequency of reference to that evidence (presumably in both testimony and argument); and (6) the identity of the party introducing the evidence (typically the Commonwealth in certification cases). *Commonwealth* v. *Dagraca,* 447 Mass. 546, 553 (2006). *Com-*

*monwealth* v. *Tyree*, 455 Mass. 676, 700-702 (2010). *Commonwealth* v. *Vasquez*, *supra* at 360-361 n. 12. An additional factor is the use or effect of curative instructions. *Commonwealth* v. *Mahdi*, 388 Mass. 679, 697 (1983). Under these criteria, I conclude that the Commonwealth has carried its burden to show that the admission of the certificates did not infect the verdict.

Independent proof of the nature of the contraband as marijuana was powerful. The Commonwealth's main witness was the Boston police detective in charge of the warranted search of the apartment. His training included instruction at "narcotics investigation schools" and the "FBI's undercover school." He had served in the department's drug control unit for eight of his eleven years of experience. He had participated in 2,000 to 2,500 cases (at an approximate rate of 300 per year) of drug investigation. From that experience he knew marijuana to be a green, leafy vegetable material with a strong characteristic odor. Those features make marijuana a far more identifiable item than the powdery or solidified forms typical of cocaine and heroin. Independently of the certificates, he identified the bags of material from the bedroom as marijuana and the unused plastic bags as packaging.

Further, the certificates of marijuana analysis had no relationship to the premise of the defense. The theme of the defense in both opening and closing statements was that the defendant lacked connection to, and possession of, the contraband. In both statements, defense counsel conceded the composition of the marijuana.[4] It was not a contested issue. Even so, the percipient and uncontested testimony of the experienced drug officer

[4]In opening remarks, defense counsel stated to the jury:

"[Y]ou will hear the police officer say, 'We found marijuana. We found marijuana.' Great, we know they found marijuana, we believe them. We don't disbelieve the police on this. They found marijuana but it is not Mr. Humphries[']."

The closing remarks were consistent:

"What has the government really proved? There were drugs, absolutely, absolutely there were drugs. You will be able to touch them, feel them, smell them [as exhibits]."

Acknowledgment by defense counsel of the nature of the contraband in the

fulfilled the Commonwealth's obligation to prove that element of the charged offense.[5] The Commonwealth supplemented the drug officer's identification of the twenty-four bags of marijuana with two certificates. In his closing the prosecutor made no reference to them. The judge made no reference to them in his instruction.

In sum, (1) proper evidence of guilt was potent; (2) the importance of the uncontested tainted evidence to the prosecution's case was slight; (3) the character of that evidence was cumulative of the valid evidence; (4) the relationship of the improper evidence to the premise of the defense (lack of possession) was nonexistent; and (5) the frequency of reference to the certificates was minimal. The only material issue for the jury was the question of constructive possession. The admission of the certificates was harmless error beyond a reasonable doubt. I would therefore affirm the judgments of conviction.

---

course of their opening and closing statements may not constitute formal stipulations within the contemplation of *Commonwealth* v. *Charles*, 456 Mass. 378, 383 (2010), but they exert a powerful impact upon the trial. Under the usual factors for assessment of harmlessness, they effectively concede the disconnection of the certificate from the defense and consequently the minimal importance of that evidence to the prosecution's case. In addition, appellate tolerance of such arguments depreciates the labor and integrity of the trial process. If defense counsel concedes the composition of the substance in an opening or closing statement, or both, he deadens the issue for the deliberation of the jury and misdirects the attention of the judge (and possibly the attention of the prosecutor) to other evidence and issues. The defendant effectively eliminates the issue from the deliberation of the jury, and then renounces the acknowledgment on appeal. While the expanding concept of judicial estoppel has not yet extended from civil to criminal litigation, see *New Hampshire* v. *Maine*, 532 U.S. 742, 749-751 (2001); *Otis* v. *Arbella Mut. Ins. Co.*, 443 Mass. 634, 639-642 (2005), its underlying values warrant some consideration in all litigation. Easy forgiveness of misdirecting arguments wastes the efforts of the trial judge and jury, and undermines the intellectual integrity of the fact-finding process.

[5]As to the school zone violation, it was undisputed that the apartment was located 712 feet from the grounds of Dorchester High School.