NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-650

COMMONWEALTH

vs.

VINCENT MITCHELL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, the defendant was found guilty of possession of cocaine with intent to distribute and possession of heroin with intent to distribute.[1] On appeal, the defendant argues that the motion judge erred by denying his motion to suppress, that there was insufficient evidence to

---

[1] These were lesser included offenses of possessing, distributing, or intent to distribute 100 to 200 grams of cocaine, in violation of G. L. c. 94C, § 32E (b) (3), and manufacturing, possessing, distributing, or intent to distribute thirty-six to 100 grams of heroin, in violation of G. L. c. 94C, § 32E (c) (2). During the trial, the Commonwealth dismissed one count of possession of a firearm without complying with G. L. c. 140, § 129C (possession of a firearm without an FID card), in violation of G. L. c. 269, § 10 (h), and one count of failure to secure a firearm. The defendant was found not guilty of four counts of possession of a firearm without an FID card, one count of possession of ammunition without complying with G. L. c. 140, § 129C, in violation of G. L. c. 269, § 10 (h); and four counts of failure to secure a firearm, in violation of G. L. c. 140, § 131L.

convict him, that a fingerprint card admitted at trial was impermissible hearsay, and that the trial judge erred in denying his motion to strike testimony of a substitute chemist.  We affirm.

Discussion.  1.  Motion to suppress.  a.  Background.[2]  In a search of 9 Falulah Street, Fitchburg (apartment), on September 9, 2016, law enforcement officers found heroin, "crack" cocaine, paraphernalia for packaging narcotics, paperwork that bore the name of the defendant or one of his codefendants, James Jones, and numerous guns.  The warrant authorizing the search listed "documents pertaining to the occupancy of James Jones."  The warrant itself did not list documents pertaining to the occupancy of the defendant.  However, the affidavit in support of the search warrant did include the "documents showing the occupants of 9 Falulah Street" and identified the defendant as a resident of the apartment.  The defendant moved to suppress items seized during the search, including documents establishing his residency.[3]

---

[2] "We summarize the facts as found by the motion judge . . . supplemented by evidence in the record that is uncontroverted and that was implicitly credited by the judge" (quotation and citation omitted).  Commonwealth v. Jones, 100 Mass. App. Ct. 600, 601-602 (2022).

[3] One item seized was a television displaying the name "Vincent" on the screen.  Given that names might appear on gaming systems, sports equipment, pet name tags, and more, "documents" may be unnecessarily limiting.

A hearing was held at which Trooper Ryan Dolan testified and one exhibit was admitted. The parties agree that the exhibit included the search warrant, the return on the search warrant, the application for a search warrant, and an affidavit of Dolan in support of the application. Dolan testified that the affidavit in support of the search warrant was attached. After a hearing, the motion judge agreed that the seizure of the papers inferentially showing the defendant's occupancy at the apartment exceeded the scope of the warrant. However, the motion judge found that because "the affidavit accompanied the warrant," if the defendant had been present, "he would have known that the police were searching for his papers and other 'records' used for the distribution of narcotics." Thus, the motion judge denied the defendant's motion to suppress such paperwork.

b. Whether the search exceeded the scope of the warrant. To the extent that the defendant's brief could be read to argue there was no evidence the warrant itself was present at the time of the search, "the defendant has waived this issue because it was not raised in his motion to suppress, see Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), or at the hearing on the defendant's motion to suppress." Commonwealth v. Santos, 95 Mass. App. Ct. 791, 794 (2019). The only issue properly before us is whether the judge's determination that the

3

affidavit was attached to the warrant and present during the search was clearly erroneous.

For a search warrant to be valid under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, as well as G. L. c. 276, § 2, it must be supported by a showing of probable cause, supported by oath or affirmation, and particularly describe the property to be searched or seized. See Commonwealth v. Valerio, 449 Mass. 562, 566 (2007). While the typical remedy of a warrant's failure to comply with the particularity requirement is suppression, that is not always the case. Id. at 567. An affidavit that is incorporated by reference to the warrant, and physically attached to the warrant and present when the search is executed "cures the particularity deficiency in the warrant and, essentially, validates the warrant." Id. at 567-568.

"In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted). Commonwealth v. Ramos, 470 Mass. 740, 742 (2015). "A finding is clearly erroneous only when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

4

committed" (citation omitted).  Commonwealth v. Carrasquillo, 489 Mass. 107, 117 (2022).

On this record, we cannot conclude that the motion judge's finding that the affidavit was attached to the warrant and present at the time of the search was clearly erroneous.  The motion judge credited the testimony of Dolan, who testified that he wrote the affidavit and submitted it with the application for the warrant.  At the hearing, the search warrant return, application for search warrant, and affidavit were all entered as a single exhibit.  Dolan described the exhibit as the application for the search warrant and stated that the affidavit was attached.  While the testimony could have been more clear, we cannot say that we are left with the definite and firm conviction that a mistake was made when the judge inferred that the affidavit was present at the time of the search.  See Carrasquillo, 489 Mass. at 117.  Accordingly, the motion judge did not err in concluding that seizure of documents bearing the defendant's name was in the scope of the search warrant and accompanying affidavit.[4]

---

[4] Even if the affidavit had not been present at the search, the documents would still be admissible as they were in plain view while police were properly searching for documents pertaining to the occupancy of Jones.  "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  Commonwealth v. D'Amour,

2.  Sufficiency of the evidence.  The defendant argues that there was insufficient evidence to link him to any drug distribution operation at the apartment.[5]  The defendant was not present during the search.  Thus, the Commonwealth proceeded on a theory of constructive possession, which "requires proof that the defendant had 'knowledge coupled with the ability and intention to exercise dominion and control.'"  Commonwealth v. Than, 442 Mass. 748, 751 (2004), quoting Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004).  Knowledge of the contraband may be proven by circumstantial evidence.  Than, supra.

a.  Standard of review.  In reviewing a sufficiency argument, we look at the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt.  Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  "[T]he evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of (guilt) beyond a reasonable doubt.'"  Id. at 677, quoting Commonwealth

_____

428 Mass. 725, 730-731 (1999), quoting Commonwealth v. Santana, 420 Mass. 205, 211 (1995).  All that is required to justify the presence of the police in the home is a valid search warrant, which we undisputedly have here.  D'Amour, supra.

[5] The defendant contests only the issue of possession; he does not claim insufficient evidence of intent to distribute cocaine and heroin.

6

v. Cooper, 264 Mass. 368, 373 (1928). A finding of guilty may be warranted "even though the inference of guilt from the facts established is not inescapable or necessary." Commonwealth v. Anselmo, 33 Mass. App. Ct. 602, 604 (1992), quoting Commonwealth v. Gagnon, 408 Mass. 185, 200-201 (1990).

No one particular item must prove beyond a reasonable doubt that the defendant was guilty. Commonwealth v. Kapaia, 490 Mass. 787, 792 (2022). Instead, "while the pieces of evidence outlined infra might not individually 'be sufficient to sustain a conviction, together they formed a "mosaic" of evidence such that the [fact finder] could [reasonably] conclude, beyond a reasonable doubt, that the defendant'" possessed the narcotics. Id., quoting Commonwealth v. Jones, 477 Mass. 307, 317 (2017).[6]

b. Facts. The judge heard evidence that before execution of the search warrant, the State police conducted surveillance of the apartment for approximately three weeks. Law enforcement observed multiple people who appeared to be drug users coming to the house, staying a "short amount of time," and leaving. The police used an informant to conduct three controlled buys inside

_____

[6] The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and at the close of all of the evidence. Because the defendant did not introduce evidence, the Commonwealth's case did not deteriorate and the question is whether the Commonwealth introduced sufficient evidence "to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Amado, 387 Mass. 179, 186 (1982).

the apartment.  During this surveillance, Dolan observed the defendant and his two codefendants leave the apartment.

During the search of the apartment, in the first bedroom on the left, described by an officer as the "operations room of . . . the [drug] distribution business," the police found surveillance monitors, a television displaying the defendant's first name on the screen, drug packaging materials, cash, heroin, and cocaine.  In the closet of the bedroom, the police found a safe bolted to the floor.  The door to the safe, which was ajar, contained more cocaine and heroin, two firearms and ammunition, and cash.  The door to this room had a deadbolt lock on it.[7]  At the time of the search, the other codefendant, Eddie McCloy, was in this first bedroom.

Detective Lieutenant Kenneth Heffernan, the unit commander of the State police crime laboratory, analyzed five latent fingerprints he found on the safe, four on its interior, as well as one on the exterior.  He uploaded enhanced photographs of the fingerprints to the Automated Fingerprint Identification System (AFIS), the fingerprint repository run by the State police.

---

[7] The first bedroom was the only room that contained narcotics. In total, the police found 106 grams of cocaine and sixty-three grams of heroin in the first bedroom.  In a second bedroom, the police found a needle, several corner baggies, and two cell phones on the bed; in a third bedroom, the police found two cellphones, codefendant Jones, who had $4,325 on him, and $1,923 in a small black medical bag; and in the kitchen, the police found two kitchen scales and packaging baggies.

8

Heffernan retrieved the defendant's fingerprint record from AFIS and compared those fingerprints to the fingerprints found on the safe. He opined that the four of the fingerprints on or in the safe were "an identification" to fingerprints on an AFIS printout bearing the defendant's name. The final print was inconclusive. Heffernan testified that he compared the prints on the safe to codefendant Jones and excluded him as the source. While the 2014 fingerprint card bore the defendant's name and a unique identification number, it did not contain the defendant's signature. Heffernan stated that he matched the fingerprints to the identification number on the card, not the name, as arrestees can occasionally provide false identification. Heffernan also testified that it was not possible to determine when a fingerprint was placed on an object.

Detective Sergeant Christopher Bellofatto of the Fitchburg police department testified that he arrested a man in 2014 who identified himself as the defendant, and that he took that man's fingerprints and uploaded them into AFIS. Bellofatto was asked to identify the person he arrested in 2014. He then identified codefendant Jones, not the defendant.[8]

---

[8] The record does not establish why the Commonwealth did not prove that the defendant's fingerprints at the time of his arrest in this matter were "an identification" with the fingerprints found on the safe.

9

Papers seized in the apartment bore the defendant's name. In a drawer in a bureau in the first bedroom, police found a job application with the defendant's name on it with an address on Rollstone Street. Also in the first bedroom, the police also found one rent receipt in the name of "Vincent Martel" dated January 6, 2016, and four receipts in the name of "C. James."[9] Elsewhere in the apartment, the police found a telephone bill addressed to the defendant at the apartment dated August 19, 2016, which overlapped with the beginning of the police investigation of the apartment. Police also found a Comcast collection notice addressed to the defendant at the Rollstone apartment dated July 5, 2016.

c. Sufficiency of the evidence of possession. Viewed in the light most favorable to the Commonwealth, there was sufficient evidence to permit a rational trier of fact to conclude that the defendant constructively possessed the cocaine and heroin with the intent to distribute.

"A defendant's 'residential status at a premises is a relevant inculpatory factor to be considered in determining whether he can be regarded as being in constructive possession of contraband found on the premises, since it indicates more than mere presence.'" Commonwealth v. Clarke, 44 Mass. App. Ct.

---

[9] No party provided the receipts in the name of C. James so we do not know the dates of those receipts.

502, 505 (1998), quoting Commonwealth v. Handy, 30 Mass. App. Ct. 776, 781 n.5 (1991).  See Commonwealth v. Lee, 2 Mass. App. Ct. 700, 704 (1974) (constructive possession of cocaine found in apartment supported by evidence that male defendant was seen coming and going from apartment and his personal papers were found therein as well as men's clothing).

Here, in the first bedroom in the apartment, police found a safe, which also contained narcotics, covered in clothes.  That safe had four of the defendant's fingerprints on the interior and exterior.  Police also found the television displaying the defendant's first name and paperwork in his name located in a bureau in the first bedroom.

Other paperwork found elsewhere in the apartment connected the defendant to the apartment.  This included a telephone bill that overlapped with the police surveillance of the apartment and a rent receipt bearing the defendant's first name.  The defendant was seen at the apartment during the three weeks of police surveillance.  While it is true that police found paperwork addressed to the defendant at a different address, that was a cancellation of a Comcast account that was older than the telephone bill.  The judge reasonably could have inferred that the documents with the Rollstone address, which were dated earlier in time, were the defendant's prior residence, and the telephone bill, which was closer in time, showed his address at

the time the search warrant was executed.  Given this mosaic of evidence, the judge could reasonably conclude, beyond a reasonable doubt, that the defendant was in possession of the narcotics.  Kapaia, 490 Mass. at 792.

The defendant's challenges to pieces of the mosaic fail because he does not view the evidence in the light most favorable to the Commonwealth.  For example, the defendant argues that the documents do nothing more than show "mere (intermittent) presence."  In the light most favorable to the Commonwealth, however, the documents show that the defendant resided in the apartment and in the first bedroom.  The defendant's argument that there was insufficient evidence that the fingerprints from 2014 on the printout from AFIS belonged to him fails for the same reason.  Notwithstanding that Bellofatto identified Jones as the arrestee six years earlier, the judge was not required to credit that view of the evidence.  The Commonwealth is entitled to reasonable inferences and the judge could infer that the person arrested and fingerprinted in 2014, who gave as his name the defendant's name, was the defendant.[10]

---

[10] The defendant challenges some of the fingerprint evidence. "[W]e consider even improperly admitted evidence" in determining questions of sufficiency.  Commonwealth v. Uriah U., 100 Mass. App. Ct. 281, 286-287 (2021).  In any event, we conclude the evidence was not admitted improperly.  See section 3, infra.

12

The defendant also contends that the evidence did not support a finding beyond a reasonable doubt that the defendant's fingerprints were the ones inside the safe, and that it was impossible to know when they were left on the safe. However, no one particular item must prove beyond a reasonable doubt that the defendant was guilty. Kapaia, 490 Mass. at 792. Instead, the judge could have reasonably concluded that the fingerprints belonged to the defendant and they can be part of the mosaic of evidence demonstrating that the defendant constructively possessed the narcotics. See Commonwealth v. Lao, 443 Mass. 770, 779 (2005) ("If, from the evidence, conflicting inferences are possible, it is for the [fact finder] to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province").

Finally, the defendant's reliance on Commonwealth v. Humphries, 76 Mass. App. Ct. 702, 702-703 (2010), is unavailing. There, a defendant's drug convictions were reversed because the defendant was not present at the time of the seizure, and the only evidence linking him to the apartment where the drugs were found was an identification card and an envelope addressed to him. In contrast to the case here, both documents in Humphries had a different address than the place where the drugs were found and no other personal effects of the defendant were found in the vacant bedroom. Id. at 703.

13

Accordingly, there was no error in denying the defendant's motion for a required finding of not guilty.

3. Hearsay. The defendant argues that the trial judge erred in admitting into evidence a fingerprint card for the defendant from 2014 that had been uploaded into AFIS. He argues that the fingerprint card was hearsay and that the Commonwealth did not lay sufficient foundation for it to be admitted as a business record. We disagree.

a. Standard of review. Where, as here, there was no objection, our review is limited to determining whether an error occurred and, if so, whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Aviles, 461 Mass. 60, 72 (2011). "A substantial risk of a miscarriage of justice exists when we have 'a serious doubt whether the result of the trial might have been different had the error not been made.'" Commonwealth v. Randolph, 438 Mass. 290, 297 (2002), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002).

b. Business record. "General Laws c. 233, § 78, as amended by St. 1954, c. 87, § 1, provides in part that a record made in the regular course of business 'shall not be inadmissible . . . because it is hearsay.'" Commonwealth v. Driscoll, 91 Mass. App. Ct. 474, 476-477 (2017).[11] A judge is

_____

[11] "[A] document is admissible as a business record if the judge finds that it was (1) made in good faith; (2) made in the

14

not required to make preliminary factual determinations regarding foundation, as the decision to admit the record implies those requisite findings.  Commonwealth v. Andre, 484 Mass. 403, 410 n.13 (2020).  "[I]t is presumed that the judge as trier of fact applies correct legal principles."  Commonwealth v. Colon, 33 Mass. App. Ct. 304, 308 (1992).

Fingerprint cards can be admissible as a business record.  Commonwealth v. Fulgiam, 477 Mass. 20, 40-41 (2017).  AFIS printouts are generally "reliable" "based on the officers' duty to ensure the [AFIS] cards are created with accurate information, and the arrestees' legal obligation to provide accurate information."  Id. at 41.  Although it is best practice to verify that the person being fingerprinted is who he claims to be, "the presence or absence of independent verification bears on the weight of the record rather than its admissibility under the business records exception."  Id. at 41-42.[12]

Here, a proper foundation for admission was laid.  Based on the testimony of Bellofatto about the process of fingerprinting an arrestee and how those fingerprints are uploaded into AFIS,

---

regular course of business; (3) made before the action began; and (4) the regular course of business to make the record at or about the time of the transaction or occurrences recorded." Driscoll, 91 Mass. App. Ct. at 479, quoting Beal Bank, SSB v. Eurich, 444 Mass. 813, 815 (2005).

[12] While the AFIS printout is missing the defendant's signature, that also goes to the weight of the evidence.  Fulgiam, 477 Mass. at 42.

and the testimony of Heffernan about the process of retrieving the AFIS printout and comparing the fingerprints on the AFIS card to the fingerprints on the safe, the trial judge could have reasonably concluded that the AFIS printout was made in good faith, and in the regular course of business.  Similarly, the judge could have found that it was the regular course of business to make the record at or about the time of the transaction or occurrences recorded.  Finally, the record was made before the action began, as the fingerprint images were added into AFIS two years prior to the defendant's arrest.  As a result, the judge did not abuse his discretion in admitting the 2014 fingerprint record.  See Andre, 484 Mass. at 411.  Given that there was no error, there was no substantial risk of a miscarriage of justice.  Randolph, 438 Mass. at 303.

4.  Chemist's testimony.  At trial, a substitute chemist testified in place of the testing chemist and identified the substances found in the apartment as illegal narcotics.  The defendant objected to the substitute chemist's testimony, claiming that while he was provided the certificate of analysis, he had not received the underlying data that supported the expert's opinion, which the Commonwealth was required to produce pursuant to Mass. R. Crim. P. 14 (a) (1) (A), as amended, 444 Mass. 1501 (2005).  The judge initially sustained the objection, requiring the Commonwealth to lay further foundation.  After

16

doing so, the Commonwealth renewed its questioning regarding the chemist's opinion, and the defendant once again objected, claiming there was a written report that he believed to be mandatory discovery. The judge overruled the objection.

On appeal, the defendant argues that he was denied a meaningful opportunity to cross-examine the substitute chemist's opinion on the chemical composition of the narcotics because the reports from which the drug certificates were produced were not provided during mandatory discovery. "[D]iscovery matters are committed to the sound discretion of the trial judge" (citation omitted). Commonwealth v. Gelfgatt, 468 Mass. 512, 519 n.11 (2014). "We will uphold discovery rulings unless the appellant can demonstrate an abuse of discretion that resulted in prejudicial error" (citation omitted). Id.[13]

Rule 14 (a) (1) (A) (vi) of the Massachusetts Rules of Criminal Procedure, as amended, 444 Mass. 1501 (2005), requires mandatory discovery for a defendant of "[i]ntended expert

---

[13] The defendant contends that his constitutional right to cross-examine the witness was denied, which is a constitutional error that must be reviewed for harmless error. However, the defendant had ample opportunity to cross-examine the substitute chemist, who was cross-examined on two separate days of trial. Because the judge did not limit the defendant's opportunity to cross-examine the substitute chemist, there was no constitutional error. See Commonwealth v. Williams, 456 Mass. 857, 873 (2010) ("a judge may limit the scope of cross-examination as long as he or she does not completely bar inquiry into a relevant subject").

opinion evidence . . . includ[ing] the identity, current curriculum vitae, and list of publications of each intended expert witness, and all reports prepared by the expert that pertain to the case." See Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 447 n.7 (2013). "A certificate of chemical analysis falls within the ambit of the Commonwealth's rule 14 discovery obligations." Commonwealth v. Butler, 87 Mass. App. Ct. 183, 186 (2015).

The testimony at trial did not show that there were any additional reports that the Commonwealth failed to disclose. The defendant admitted that he received the required certificate of analysis. The Commonwealth contends, and the chemist's testimony reflects, that she was using the terms "report" and "certificate" interchangeably. And the defendant is not arguing that the chemist failed to turn over the underlying graphs or reports, but instead a report that would have been subject to mandatory disclosure, such as the certificate of analysis. Because there is no evidence of a report that was not produced, we discern no error. See Commonwealth v. Sanders, 451 Mass. 290, 296 (2008) (evidence was insufficient to support defendant's claim that Commonwealth violated discovery

obligation when "there [was] no evidence in the record that such a report existed").

Judgments affirmed.

By the Court (Wolohojian, Henry & Hershfang, JJ.[14]),

*Joseph F. Stanton*

Clerk

Entered:  August 14, 2023.

---

[14] The panelists are listed in order of seniority.